# Commonwealth v. White

*Craig Stedman, district attorney,* for Commonwealth.

*R. Russell Pugh,* for defendant.

ASHWORTH, *J.,* June 9, 2009—William Anthony White has filed a post-sentence motion, nunc pro tunc. For the reasons set forth below, this motion will be denied.

## I. BACKGROUND

On August 15, 2005, at approximately 11:30 p.m., Stephen Ruhl was confronted in the 600 block of North Shippen Street in the City of Lancaster by a group of at least three males as he walked home from Stubby's Bar after having purchased a six-pack of beer. Mr. Ruhl was struck in the face with a handgun and told to remove his belongings. He complied, turning over his wallet, which contained approximately $150 in cash, and credit cards. He was then struck in the face with the six-pack of beer before the perpetrators fled. (N.T., guilty plea at 15-16.)

Approximately 40 minutes later, there was an attempt by one of the perpetrators to use one of Mr. Ruhl's stolen credit cards at the Wal-Mart on Lincoln Highway East. Police responded to the store and obtained the surveillance video, which they later determined contained photos of defendant, along with his accomplices, Wilbert T. Robinson and Tavon Robinson. (N.T., guilty plea at 16-17.)

As a result of these incidents, defendant was ultimately charged at Information no. 1479-2006 with criminal conspiracy[1] and robbery.[2]

On August 25, 2005, at approximately 9:42 p.m., Anthony Pugliese was approached by a group of at least three males as he walked home from the Green Briar Cafe in the area of North Shippen Street in the City of Lancaster. Mr. Pugliese was kicked and punched repeatedly by the group of males all over the upper half of his

---

1. 18 Pa.C.S. §903.
2. 18 Pa.C.S. §3701(a)(1).

body, with the majority of blows being directed to his face and head area, resulting in serious bodily injury, including eight facial fractures. In the course of the assault, the actors rummaged through Mr. Pugliese's pockets and removed $1.50. (N.T., guilty plea at 19-20.)

Mr. Pugliese heard someone come to the scene to assist him by yelling at the group and telling them "to leave him alone"; however, Mr. Pugliese was unable to see anything at that time because he had blood in both of his eyes, and the assault continued. The individuals who came to Mr. Pugliese's assistance were Gina Boley and Erica Sheneberger, who pulled up in a vehicle and yelled at the group. Ms. Boley and Ms. Sheneberger observed four or five individuals assaulting Mr. Pugliese. The women drove away when they were approached by a male who pointed a black handgun at their car and told them to get away. Ms. Boley and Ms. Sheneberger drove around the block and returned to aid Mr. Pugliese after calling the police. (N.T., guilty plea at 20-22.)

On the same evening of August 25, 2005, at approximately 10:45 p.m., Michael Martin and Josh Wolpert left Cherry's Jubilee (a restaurant) and traveled down Park Avenue in the City of Lancaster to Stubby's Bar. As they walked, they passed a black male who was seated on a porch with a shirt pulled over his face. As they passed him, the male stood up and approached them and said he had a gun under his shirt, and that they should walk down the alley or he would "put something hot in [them]." Mr. Martin and Mr. Wolpert complied with the directive and walked down the alley where they were approached by about four other males with red bandanas on their faces. The men were told to empty their pockets and they complied, giving their wallets, cell

phones, cigarettes, and other items to the perpetrators. Mr. Wolpert saw what he believed to be a firearm under one man's shirt. The victims were told to walk down the alley and not turn around, and they complied. They went directly to the City Police Station and reported the incident. (N.T., guilty plea at 22-23.)

Approximately 50 minutes later at 11:36 p.m. on August 25, 2005, Stephen Smoker and Bethany DeGaetano were standing in front of 404 West James Street in Lancaster City embracing and saying goodbye as they were approached by five black males who walked passed them and turned the corner. Moments later, the group of males returned walking at a fast pace and struck Mr. Smoker in his face, causing him to fall to the ground. Mr. Smoker was encircled by the individuals so he got in the fetal position as the individuals were throwing punches. The perpetrators rummaged through Mr. Smoker's pockets and removed his wallet. As one of the individuals was about to kick Mr. Smoker in the face, Ms. DeGaetano came to his aid by attempting to push the individual. He responded by punching Ms. DeGaetano in the face. The group of individuals then walked away west on James Street towards Franklin and Marshall College. Mr. Smoker immediately called the police and reported the incident. (N.T., guilty plea at 23-26.)

Officer Mark Radmore of the Lancaster City Bureau of Police responded to a dispatch of the robbery and proceeded toward Franklin and Marshall College in a marked patrol car where he observed a black male at an ATM machine located at the Turkey Hill convenience store on Harrisburg Pike with a tan vehicle parked in front of the ATM with four black male occupants. The male at the ATM machine became visibly nervous when

he observed the police car and began to walk away at which time he was directed to stop, but he refused and fled on foot. He was later apprehended and identified as William White, the defendant herein. Ms. DeGaetano identified White as the individual who punched her. The driver of the vehicle was identified as Wilbert Robinson, the front passenger was his brother, Geollious Robinson, and the rear passengers were Gaston Robertson-Stewart, cousin to the Robinson brothers, and Garry S. Dorsey. (N.T., guilty plea at 25-26.) A subsequent search of the car revealed items belonging to some of the robbery victims, including the cell phone of Josh Wolpert and the wallet of Stephen Smoker. (*Id.* at 25.) Additionally, an ATM card belonging to Michael Martin was found at the scene. (*Id.* at 26.)

As a result of these incidents, defendant was charged at Information no. 5140-2005 with multiple counts of criminal conspiracy,[3] robbery[4] and aggravated assault.[5] Thereafter, defendant's cases were consolidated, for purposes of trial, with his six accomplices, Wilbert T. Robinson, Geollious Robinson, Garry S. Dorsey, Gaston A. Robertson-Stewart, Tavon Robertson,[6] and Dominique Boyer.[7]

After numerous trial continuances by defendant, he chose to enter an open plea on May 7, 2007. At that time, the court accepted defendant's plea, after determining

3. 18 Pa.C.S. §903.

4. 18 Pa.C.S. §3701(a)(1).

5. 18 Pa.C.S. §2702(a)(1).

6. Tavon Robertson was involved only in the initial incident on August 15, 2005, involving Stephen Ruhl.

7. Dominique Boyer was involved only in the incident on August 25, 2005, involving Anthony Pugliese.

that defendant had knowingly, voluntarily, and intelligently chosen to plead guilty. (N.T., guilty plea at 27.) Sentencing was deferred pending a pre-sentence investigation report. Defendant was represented by court-appointed counsel at his plea, specifically, Michael V. Marinaro, Esquire.

On August 2, 2007, defendant was sentenced on Information no. 5104-2005 to an aggregate sentence of nine and one-half years to 19 years. On Information no. 1479-2006, defendant received a sentence of three to six years incarceration on the robbery charge and two to four years on the criminal conspiracy charge. The sentences on these charges were concurrent to each other but consecutive to the sentence at no. 5104-2005. Thus, the aggregate effect of these sentences was 12 1/2 years to 25 years. Defendant was represented by Attorney Marinaro at this sentencing hearing.

On August 6, 2007, White filed a timely motion to modify and reduce sentence claiming that the sentence imposed by the court (1) failed to consider the sentencing guidelines, (2) failed to provide adequate reasons for sentencing defendant to the high end of the standard sentencing range for each count, and (3) was unreasonable and excessive. On August 9, 2007, I entered an order denying White's motion to modify and reduce sentence.

White filed a direct appeal with the Superior Court of Pennsylvania on September 4, 2007, from his judgment of sentence entered on August 2, 2007, as finalized by the denial of defendant's post sentence motion by order dated August 9, 2007. On October 1, 2007, defendant filed a Pennsylvania Rule of Appellate Procedure 1925(b)

statement identifying three issues for appeal.[8] On October 10, 2007, I filed an opinion pursuant to Rule 1925(a) addressing each of the issues raised on appeal.

In the interim, on October 4, 2007, defense counsel filed a motion for leave to withdraw as counsel, which was granted the same day. New appellate counsel was not appointed, however. Consequently, the direct appeal was dismissed by the Superior Court on October 22, 2007, for failure of defendant to file a docketing statement, pursuant to Pa.R.A.P. 3517.[9]

On October 21, 2008, White filed, pro se, a timely petition for post conviction collateral relief, raising 28 issues. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, R. Russell Pugh, Esquire, was appointed on October 23, 2008, to represent White on his collateral claims. Counsel was granted two extensions to prepare an amended petition on behalf of White. However, after a thorough review of the record in this matter and after consultation with counsel, this court determined that defendant was entitled to relief as his constitutional rights were violated when he was denied his right to appellate counsel. This violation was a direct

---

8. The three bases for appeal were: (1) the plea of guilty was not a knowing, intelligent and voluntary act on the part of defendant; (2) the court failed to properly advise defendant of the nature and consequences of his plea; and (3) the court abused its discretion by not considering certain mitigating factors.

9. Rule 3517 provides as follows: "Whenever a notice of appeal to the Superior Court is filed, the prothonotary shall send a docketing statement form which shall be completed and returned within 10 days in order that the court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal. *Failure to file a docketing statement may result in dismissal of the appeal.*" Pa.R.A.P. 3517. (emphasis added)

result of the trial court's ruling granting Attorney Marinaro's motion to withdraw without appointing new appellate counsel pursuant to Pa.R.Crim.P. 122.[10]

Accordingly, on May 1, 2009, White's petition for post-conviction collateral relief was granted and his direct appeal rights were reinstated, nunc pro tunc. On June 2, 2009, defendant filed a post-sentence motion, nunc pro tunc, in which he raises three issues: (1) whether defendant's plea was not voluntary, knowing and intelligent because of the effects of medications he had taken prior to his plea; (2) whether defendant's plea was not voluntary, knowing, and intelligent because defendant was advised by his attorney that he would receive a sentence similar to that of his codefendant Garry Dorsey; and (3) whether defendant's sentence was unlawful or contrary to sentencing norms or an abuse of discretion in that it was three-times longer than sentences imposed on similarly-situated codefendants convicted of the same or similar offenses.

## II. DISCUSSION

Initially, defendant asserts that his guilty plea was "not voluntary, knowing and intelligent because of the effects of medications administered by the Lancaster County Prison prior to his plea." (See post-sentence motion at ¶6(a).)

"Our law is clear that, to be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. There

_____

10. Rule of Criminal Procedure 122, entitled "Appointment of counsel," provides in relevant part: "When counsel is appointed, . . . (2) the appointment shall be effective until final judgment, including any proceedings upon direct appeal." Pa.R.Crim.P. 122(B).

is no absolute right to withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court. To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to 'manifest injustice.' A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently. A defendant's disappointment in the sentence imposed does not constitute 'manifest injustice.'" *Commonwealth v. Bedell,* 954 A.2d 1209, 1212 (Pa. Super. 2008) (quoting *Commonwealth v. Pollard,* 832 A.2d 517, 522 (Pa. Super. 2003)).

In order to ensure a knowing, voluntary and intelligent plea, the court is required to ask the following questions in the guilty plea colloquy: (1) Does the defendant understand the nature of the charges to which he is pleading guilty or nolo contendere? (2) Is there a factual basis for the plea? (3) Does the defendant understand that he has the right to a jury trial? (4) Does the defendant understand that he is presumed innocent until found guilty? (5) Is the defendant aware as to the permissible range of sentences; and (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement unless he accepts such agreement. *Bedell, supra* at 1212 (citing Pa.R.Crim.P. 509 comment). See also, *Commonwealth v. Willis,* 471 Pa. 50, 51-52, 369 A.2d 1189, 1189-90 (1977).

"[N]othing in [Rule 509] precludes the supplementation of the oral colloquy by a written colloquy that is read, completed, and signed by the defendant and made a part of the plea proceedings." *Bedell, supra* at 1212-13 (citing *Commonwealth v. Morrison,* 878 A.2d 102, 108 (Pa. Super. 2005)). In this case, defendant completed and

signed a seven-page written guilty plea colloquy "long form" which was incorporated into the record. Defendant confirmed for the court during the guilty plea hearing that he had reviewed the colloquy form with his attorney, had signed it and had no questions regarding the document. (N.T., guilty plea at 13-14.)

On this form, defendant acknowledged at questions 9 and 10 that he was being treated for "depression/mood disorder." However, he noted at question 11, that despite suffering from and being treated for depression, he could fully cooperate with his attorney, comprehend what he was doing, and understand what the questions meant and why he must answer them. Additionally, in response to questions 12 and 13, defendant stated that he had taken antidepressants within the past 24 hours. However, defendant denied, in response to question 14, that this medication rendered him incapable of understanding the questions and answering them.

Defendant's plea of guilty is also supported by the oral colloquy in which I specifically questioned defendant regarding his depression and the medication he was taking for treatment of depression. (N.T., guilty plea at 14-15.) At that time (4 p.m. in the afternoon), defendant noted that while he was not "presently on any medications," he had taken his antidepressant the previous night. (*Id.* at 14.) Yet, defendant consistently answered throughout the guilty plea hearing that he understood his constitutional rights, understood the elements of each criminal charge and the possible sentences associated with each, understood the Commonwealth's evidence against him, and understood the court's role in sentencing him. By his actions and his words, defendant acknowledged that he understood the criminal proceeding and could fully

participate in it. A defendant's "contention that his physical and mental condition rendered him incapable of making an intelligent and voluntary decision to plead guilty is belied by his acknowledgment during the plea colloquy that he understood what he was doing and that his physical ailment . . . did not impair his ability to comprehend the proceedings." *Commonwealth v. Rumbaugh,* 365 Pa. Super. 388, 390-91, 529 A.2d 1112, 1113 (1987).

Our Supreme Court has determined that "[c]ompetence to plead guilty depends upon whether the defendant has the 'ability to comprehend his position as one accused of [a crime] and to cooperate with his counsel in making a rational defense,' . . . and whether he has 'sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and (has) a rational as well as factual understanding of the proceedings against him.'" *Commonwealth v. Frey,* 588 Pa. 326, 336-37, 904 A.2d 866, 872 (2006). (citations omitted) The determination of competency is a matter for the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *Id.* at 337, 904 A.2d at 872.

The written colloquy and defendant's answers to questions at the guilty plea hearing satisfy this court that defendant's plea was a knowing and voluntary plea of guilty entered into with a full understanding and appreciation of the charges and the legal consequences. Defendant clearly demonstrated the ability to comprehend the proceedings against him and to consult with his attorney in making a rational decision relative to the charges and the plea. Under the totality of the circumstances, this court found that defendant's diagnosis of

"depression/mood disorder" for which he was taking medications did not render him incompetent for purposes of entering a guilty plea. This determination was a matter for the sound discretion of the trial court and should not be disturbed.

Next, defendant contends that his plea was not voluntary, knowing and intelligent because "[defendant] was advised by his attorney that he would receive a sentence similar to that of his codefendant Gary [sic] Dorsey, four to eight years, if he pled guilty before Judge Ashworth's temporary absence from the bench for knee surgery. If the plea was delayed, Judge Georgelis would assume the case and a much longer sentence could be expected." (See post-sentence motion at ¶6(b).)

Based upon a review of the record in this matter, it is clear that defendant's request to overturn the guilty plea and the sentence is at odds with the truth of this case. The truth of this case is that White understood the charges against him, recognized the substantial jail sentence which could be applied, and was fully and well represented by counsel throughout the case. The truth of this case is that White is simply unhappy with his sentence. However, as noted above, "[a] defendant's disappointment in the sentence imposed does not constitute 'manifest injustice'" sufficient to justify a withdrawal of a plea after sentencing. *Bedell,* 954 A.2d at 1212.

Attorney Marinaro's alleged statements to defendant about what he believed his likely sentence might be did not induce the guilty plea because any misconceptions defendant had about his possible sentence were dispelled by the written and oral plea colloquies. The record clearly establishes that White was aware that he was

charged with five counts of robbery, one count of aggravated assault, one count of simple assault, and one count of criminal conspiracy (N.T., guilty plea at 2, 5-8), that he understood the nature of these charges (*id.* at 6-8), that he was satisfied that he had committed these offenses or that the Commonwealth could present sufficient evidence to establish the charges[11] (*id.* at 16-26), that he was giving up his right to a jury trial and the presumption of innocence (*id.* at 3), and that each felony offense carried a maximum jail term of 20 years. (*Id.* at 8-9.)

In the colloquy with defendant, this court clearly advised defendant that he was entering a straight plea "which [meant] there [was] no agreement between [defendant], [his] attorney, the Commonwealth, and this court as to what sentence may be imposed." (N.T., guilty plea at 4.) The court further stated: "It is entirely up to my discretion after I have reviewed a presentence investigation report to decide what sentence, if any, should be imposed." *(Id.)* The undersigned told defendant at his guilty plea hearing that he could receive a maximum potential sentence of 20 years for each felony and that if all the charges were sentenced consecutively he would be subject to a maximum potential sentence of 152 years in prison. (*Id.* at 8-9.) This information was also included in the written guilty plea colloquy form at ¶23.

Additionally, at ¶¶32, 33, 34 and 37 of the written colloquy form, defendant acknowledged that he was entering the plea of his own free will without the influ-

---

11. Defendant entered an *Alford* plea to four of the charges thereby acknowledging that the Commonwealth had sufficient evidence that, if presented at trial, the jury would find guilt beyond a reasonable doubt. (See N.T., guilty plea at 18, 22.)

ence of promises, force, threats or coercion, and that it was his decision alone to plead guilty. The record is clear that White knew he risked a 20-year term of imprisonment and that no sentence was promised to him. He elected to proceed to plead guilty. Moreover, there is no legal requirement that a defendant be aware of the guideline ranges in order to enter a valid guilty plea, although in this case, the sentencing guidelines were thoroughly reviewed with defendant. (N.T., guilty plea at 9-13.)

By the nature, extent and tone of the guilty plea hearing, this court was well satisfied that Attorney Marinaro had fully executed his duties in advising White of the nature of the charges and the possible consequences of his plea. White simply did not tender a guilty plea based on promises by counsel. See *Commonwealth v. Fowler,* 893 A.2d 758 (Pa. Super. 2006).

The only "evidence" suggesting that defendant's guilty plea was induced by counsel's alleged advice that he would receive a four to eight year sentence is White's proffered testimony which directly contradicts defendant's own statements made during the oral plea colloquy and on the written colloquy.

"The long-standing rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. . . . A person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. . . .

"A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We (cannot) permit

a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel. . . ." *Commonwealth v. Pollard,* 832 A.2d 517, 523-24 (Pa. Super. 2003). (citations omitted) The evidence simply does not support defendant's claim of unlawful inducement.

Lastly, White claims that the sentence imposed by the court was "unlawful or contrary to sentencing norms or an abuse of discretion in that it was three times longer than similarly-situated codefendants convicted of the same or similar offenses." (See post-sentence motion at ¶6(c).) With this issue, defendant is challenging the discretionary aspect of his sentencing.

We begin by noting that sentencing is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Commonwealth v. Tirado,* 870 A.2d 362, 365 (Pa. Super. 2005). An abuse of discretion is more than an error in judgment. A sentencing court has not abused its discretion "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Commonwealth v. Smith,* 543 Pa. 566, 571, 673 A.2d 893, 895 (1996). Moreover, Pennsylvania law is well settled that the trial court is not bound to impose an identical sentence on all participants of a crime. *Commonwealth v. Myers,* 370 Pa. Super. 326, 330, 536 A.2d 428, 430 (1988).

Defendant argues that this court abused its discretion by imposing a higher and disproportionate sentence upon defendant in comparison with his coconspirators who were sentenced by another judge to a shorter term of imprisonment than defendant. On September 29, 2006,

codefendant Dominique Boyer was sentenced on docket no. 5139-2005 on three counts of robbery (F1), two counts of criminal conspiracy to commit robbery (F1), and one count of aggravated assault (F1) for crimes committed against Anthony Pugliese on August 25, 2005. He was sentenced by the Honorable Paul K. Allison to an aggregate sentence of four to eight years in a state correctional facility. Boyer did not participate in the August 15, 2005 robbery on docket no. 1502-2006 and, therefore, was not a co-defendant on that docket with defendant White.

On May 2, 2007, codefendant Garry Dorsey was sentenced on docket no. 5137-2005 on three counts of robbery (F1), two counts of robbery (F2), one count of criminal conspiracy to commit robbery (F1), and one count of aggravated assault (F1) for crimes committed on August 25, 2005. He was sentenced by Judge Allison to an aggregate sentence of four to eight years imprisonment. Dorsey also did not participate in the August 15, 2005, robbery of Stephen Ruhl on docket no. 1502-2006, and, therefore, was not a codefendant on that docket with defendant White.

Under the facts of this case, the court's sentence was not disproportionate to the sentences imposed on White's codefendants. In so concluding, we rely upon *Commonwealth v. Hollerbush,* 298 Pa. Super. 397, 444 A.2d 1235 (1982), wherein our Superior Court was faced with a similar situation to the one currently before us. There the court stated:

"This is not a situation where the appellant and his accomplices were tried jointly, or where they were tried singly and sentenced by the same judge. The sentencing

judge in this case neither tried nor sentenced any of appellant's accomplices. Where, as here, the sentencing court considered the circumstances of the crime and the particular characteristics of the appellant, the fact that the appellant received a stiffer sentence than other appellants guilty under the same statutory provisions for their respective roles in this gang rape does not in itself constitute grounds for a finding that the appellant's sentence was excessive. *Commonwealth v. Jezorwski,* 280 Pa. Super. 178, 421 A.2d 464 (1980)." 298 Pa. Super. at 408, 444 A.2d at 1241.

Similarly, in *Commonwealth v. Fuller,* 396 Pa. Super. 605, 620, 579 A.2d 879, 887 (1990), the Superior Court held that the fact that a defendant received a sentence greater than that of his coconspirators was not in and of itself sufficient grounds to merit re-sentencing.

In the instant case, White pleaded guilty and was sentenced to 12 1/2 to 25 years, while White's codefendants, Boyer and Dorsey, who also pleaded guilty, were sentenced to four- to eight-year terms of imprisonment by a different judge. When a defendant's accomplice is tried, or pleads guilty, in a separate proceeding, and is sentenced by a different judge, the sentencing court is not required to explain an alleged disparity between the defendant's sentence and that of the accomplice. *Commonwealth v. Szczesniewski,* 404 Pa. Super. 617, 621, 591 A.2d 1055, 1057 (1991); *Myers,* 370 Pa. Super. at 330-31, 536 A.2d at 430. See also, *Commonwealth v. Holler,* 326 Pa. Super. 304, 310, 473 A.2d 1103, 1107 (1984) (it is not incumbent upon the court to be guided by a sentence a different court imposes on a codefendant). Moreover, even if the disparity is so great that reasons should have been given, see *Myers,* 370 Pa.

Super. at 330-31, 536 A.2d at 430, a review of the sentencing hearing reveals that this court articulated factors that were sufficient to support defendant's sentence.

First and foremost, the different sentences arose from the different crimes of which the three coconspirators were convicted. Counsel for defendant argues that the sentence imposed on defendant is three times the sentence imposed on "similarly-situated codefendants convicted of the same or similar offenses." (See post-sentence motion at ¶6(c).) However, in point of fact, Dominique Boyer was not even involved in two of the three incidents on the evening of August 25, 2005. He was taken into custody after the initial robbery and assault of Mr. Pugliese, so his charges were very limited. Moreover, he was not a participant with defendant in the robbery of Mr. Ruhl on August 15, 2005. Garry Dorsey, on the other hand, did participate with defendant in all three of the attacks on August 25, 2005. However, he was not with defendant when he robbed Mr. Ruhl on August 15, 2005. Therefore, Dorsey's situation was also different from defendant's.

In addition, Dorsey and Boyer pleaded guilty and were sentenced prior to the criminal court term. Whereas, defendant waited to plead guilty until just before the jury was to be selected for trial; a trial for which the Commonwealth had fully prepared by subpoenaing more than 30 witnesses, including two witnesses (victims) who were flown in from Chicago, Illinois, and another who traveled from Virginia. (See N.T., sentencing at 29.) Also, this sentencing court had the benefit of a pre-sentence investigation report, while no such report was prepared regarding White's codefendant, Garry Dorsey.

Defendant's sentence was based solely on the facts of his case and on his prior record. The fate of defendant's coconspirators was not, and should not be, considered in determining defendant's sentence. *Myers,* 370 Pa. Super. at 330, 536 A.2d at 430. Nonetheless, under the facts of this case, the court's sentence was not wholly and irrationally disproportionate to the sentences imposed on defendant's codefendants.

Alternatively, defendant claims there was "an inadequate informational basis for a 12-1/2 to 25 year sentence." (See post-sentence motion at ¶6(c).) Here, the court had the benefit of a pre-sentence investigation report. Our Supreme Court has held that where a pre-sentence report exists, the appellate court will presume the sentencing court was aware of any and all relevant information contained in the report regarding the defendant's character and weighed those considerations along with all mitigating statutory factors. *Commonwealth v. Devers,* 519 Pa. 88, 101-102, 546 A.2d 12, 18-19 (1988). In discussing *Devers,* the Superior Court has explained:

"In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a pre-sentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. . . . Additionally, the sentencing court must state its reasons for the sentence on the record. . . . The sentencing

judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." *Commonwealth v. Fowler,* 893 A.2d 758, 766-67 (Pa. Super. 2006). (citations omitted)

Here, all of the reasons for the sentence and all of the factors considered before imposing it were comprehensively stated on the record at the sentencing hearing. The court carefully considered the following: defendant's age (20); his family history; his educational background, having dropped out of school in the 12th grade; his substance abuse history, starting with his use of marijuana and alcohol at the age of 16; his almost nonexistent employment history (approximately 45 days); and his prior juvenile and adult criminal records. (N.T., sentencing at 10-14.) It is clear from the record that this court carefully considered the entire pre-sentence investigation report.

Furthermore, the court took into consideration defendant's statements to the court (N.T., sentencing at 7-8), what defense counsel had to say on behalf of defendant (*id.* at 3-7), and what the assistant district attorney had to say on behalf of the Commonwealth (*id.* at 8-10), as well as the provisions of the Sentencing Code, the authorized penalties and the circumstances of the offenses. The court also took into account the rehabilitative needs of defendant.

The court carefully considered the sentencing guidelines in determining the time of incarceration for this defendant's offenses. Here, defendant pleaded guilty to multiple counts of criminal conspiracy, robbery, and aggravated assault, which are graded as felonies in the first

degree. A person convicted of such crimes may be sentenced to imprisonment for not more than 20 years. Defendant's sentence of 12 1/2 to 25 years did not exceed the statutory maximum. Nor were any of the individual sentences outside the standard guidelines.[12] Given the violent acts committed in this case, as well as defendant's total exposure as far as lawful maximums and potential consecutive sentences, defendant's sentence was not an abuse of discretion.

When reviewing sentencing matters, the Superior Court must accord the sentencing court great weight, and a sentence will not be disturbed where it is evident that the sentencing court was aware of the sentencing considerations and weighed the considerations in a meaningful fashion. *Commonwealth v. Cappellini,* 456 Pa. Super. 498, 513, 690 A.2d 1220, 1228 (1997). Moreover, where the court's sentencing colloquy "shows consideration of the defendant's circumstances, prior criminal record, personal characteristics and rehabilitative potential, and the record indicates that the court had the benefit of the pre-sentence report, an adequate statement of the reasons for the sentence imposed has been given." *Commonwealth v. Brown,* 741 A.2d 726, 735-36 (Pa. Super. 1999) (quoting *Commonwealth v. Phillips,* 411 Pa. Super. 329, 344, 601 A.2d 816, 823-24 (1992)). These requirements have been met in this case.

---

12. I agreed, during an in-camera discussion with co-counsel, that a prior ruling by Judge Allison that there was no basis for applying either the deadly weapon mandatory or deadly weapon enhancement would apply in this case. This conclusion was based both on the fact that the Commonwealth could not establish the actual possession of the gun by defendant during the robberies, and that no firearm was ever recovered. For these reasons, the Commonwealth was prevented from invoking the mandatory and the enhancement.

## III. CONCLUSION

For the aforementioned reasons, William A. White's post-sentence motion will be denied.

Accordingly, we enter the following:

## ORDER

And now, June 9, 2009, upon consideration of defendant William Anthony White's post-sentence motion, nunc pro tunc, it is hereby ordered that said motion is denied.

Pursuant to Pa.R.Crim.P. 720(B)(4), this court advises defendant that he has the right to appeal from this order. Defendant shall have 30 days from the date of this final order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights.

If you financially qualify, an appeal may be filed without the payment of costs (in forma pauperis), and there is the same right to assigned counsel as existed through sentencing.