904 A.2d 866

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James E. FREY, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 2005.

Decided Aug. 22, 2006.

328

James Lawrence Best, Sunbury, Paige Rosini, for James Eugene Frey, Jr.

Anthony J. Rosini, Shamokin, Amy Zapp, Harrisburg, for Com.

BEFORE: CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NEWMAN.

James E. Frey, Jr. (Appellant) appeals from the Judgment of Sentence of the Court of Common Pleas of Northumberland County (trial court), which imposed the death penalty after his entry of a plea of guilty to first-degree murder.[1] For the reasons that follow, we affirm the Judgment of Sentence.

## FACTS AND PROCEDURAL HISTORY

At approximately eleven o'clock in the evening of January 5, 2004, James E. Frey, Jr. (Appellant) tracked down his forty-five-year-old estranged wife, Debra Frey (Debra), at her workplace, held her at gunpoint, and forced her to flee with him in his vehicle. While parked in a cornfield outside of Sunbury, Northumberland County, Appellant and Debra had sexual relations.[2] At some point, Appellant asked Debra whether they would reconcile, but Debra was noncommittal. Appellant then noticed that two vehicles were approaching and heard Debra's cell phone ringing. Believing that the co-workers of Debra were attempting to rescue her, Appellant, armed with a handgun, shot Debra once in the chest and once in the head and then shot himself in the chest. Appellant lost consciousness and Debra died from her wounds.

The next morning, Appellant called 911 to relate what had transpired the previous night. Pennsylvania State Police troopers immediately began looking for Appellant and eventually found his vehicle along the north side of Clements Road in Upper August Township. After reading Appellant his *Mi-*

---

1. 18 Pa.C.S. § 2502(a).

2. The Commonwealth did not charge Appellant with rape, and Appellant maintains that the sex was consensual.

*randa* [3] rights at the scene, officers asked him what had happened. Appellant related that he had shot and killed his wife and then shot himself because his wife had left him and would not give him a second chance. Appellant further admitted that he had gone to her workplace and forced her to leave with him with the intention of killing her.

Pursuant to a warrant authorizing a search of the residence of Appellant, police subsequently obtained a letter written by Appellant dated January 4, 2004, indicating that he planned to kill his wife and himself. The Commonwealth arrested Appellant and charged him with first-degree murder, aggravated assault,[4] and kidnapping.[5]

One year later, the trial court received a letter from Appellant dated January 6, 2005, which read as follows:

> Honorable Judge Sacavage,
>
> Would you please be willing to talk to me in you [sic] chamber [sic] pertaining to my case? I know that what I did was very wrong. There's no need for a trial. I'm guilty and that's the bottom line. I'm asking you to enter the plea of guilty and to invoke the Death Sentence that is being sought by the D.A. I've always taken responsibility for anything that I've ever done. This time is no different. I will await your answer. Thank you for your time.
>
> James E. Frey, Jr.

*Commonwealth v. Frey,* No. CR–04–226, slip op. at 11 (unnumbered) (C.P. Northumberland filed Apr. 12, 2005). The trial court ordered that the letter be filed under seal and certified copies be provided to counsel by personal delivery.[6]

In response to Appellant's Petition for Competency Examination, the trial court appointed psychiatrist John Hume, M.D. (Dr. Hume) to examine Appellant. Dr. Hume submitted a

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** 18 Pa.C.S. § 2702.

**5.** 18 Pa.C.S. § 2901.

**6.** On February 9, 2005, the trial court lifted that part of the Order that sealed the document.

report to the trial court, which held a competency hearing on February 8, 2005. After presenting his report at the competency hearing, Dr. Hume testified that it was his opinion that Appellant was competent within a reasonable degree of medical certainty. After conducting an extensive discussion with Appellant, the trial court agreed and found him competent.

Thereafter, Appellant indicated his desire to enter a plea of guilty to the charges of first-degree murder and aggravated assault and a plea of *nolo contendere* to the kidnapping charge. Appellant completed a written guilty plea colloquy form and submitted it to the trial court. After conducting an extensive oral colloquy with Appellant, the trial court found that he entered his pleas knowingly, intelligently, and voluntarily. Appellant indicated his desire to waive his right to a sentencing jury, and the Commonwealth agreed.

On February 22, 2005, the trial court held a sentencing hearing. The Commonwealth was prepared to present more than a dozen witnesses, but Appellant agreed to stipulate to the aggravating circumstance that the homicide occurred during the commission of a felony,[7] namely, kidnapping. In addition, Appellant agreed to stipulate to the following exhibits, *inter alia,* that the Commonwealth had introduced: (1) a copy of the Complaint; (2) the Affidavit of Probable Cause; (3) the preliminary hearing transcript; (4) photographs; (5) copies of the 911 tapes; (6) medical records; (7) autopsy and serology reports; and (8) victim impact statements. (Transcript of sentencing hearing, 2/22/05, at 8–11).

Although his counsel was prepared to introduce mitigation evidence at the sentencing hearing, Appellant directed her not to present any such evidence. After informing him that his decision would likely result in an imposition of the death penalty, the trial court asked Appellant whether he desired to affirm his plea. Having answered in the affirmative, Appellant also indicated to the trial court that he was satisfied with the advice and representation of his counsel. The trial court accepted the stipulations of Appellant.

7.  *See* 42 Pa.C.S. § 9711(d)(6).

After reviewing the evidence submitted at the sentencing hearing, the trial court found one aggravating circumstance pursuant to 42 Pa.C.S. § 9711(d)(6) and no mitigating circumstances. Accordingly, the court imposed a death sentence pursuant to 42 Pa.C.S. § 9711(c)(iv) (requiring a sentence of death in the absence of any mitigating circumstance if there is at least one aggravating circumstance).

Pursuant to 42 Pa.C.S. § 9711(h)(1), the death sentence imposed upon Appellant is subject to automatic review by this Court. *See also* 42 Pa.C.S. § 722 (conferring on the Supreme Court exclusive jurisdiction of appeals from death sentences imposed by the courts of common pleas).

## DISCUSSION

On appeal, Appellant presents four issues for our review. We will discuss each in turn.

### I. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Weiss*, 565 Pa. 504, 776 A.2d 958, 963 (2001). In the specific context of first-degree murder, the evidence is sufficient if the Commonwealth established that the defendant: (1) with a specific intent to kill, (2) unlawfully killed another person (3) willfully, deliberately, and with premeditation. *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 583 (1998); 18 Pa.C.S. § 2502. "Specific intent to kill may be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 311 (1995).

In the first issue he raises on appeal from his death sentence, Appellant contends that he did not act willfully, deliberately, and with premeditation. Rather, according to Appellant, he committed the killing in the heat of passion or,

alternatively, as a result of temporary insanity. We find no evidence to support either contention.

The evidence established that Appellant drove to his estranged wife's place of employment, brandished a handgun, and forced her into his vehicle. The next morning, the Northumberland County 911 Center received a call from Appellant in which he indicated that he had shot his wife and himself. Shortly thereafter, the Pennsylvania State Police located Appellant and observed that he was severely injured from a gunshot wound to the chest. In the passenger seat was the body of Debra with fatal gunshot wounds to her chest and left temple. After a trooper advised Appellant of his rights, he again admitted that he had shot his wife and himself. Appellant explained that his wife had left him and would not give him a second chance and disclosed that he had planned to kill her.

From the floor of Appellant's vehicle police recovered the following: (1) a .44–caliber magnum handgun, which had four spent casings and two live rounds; (2) ammunition; (3) impact marks; and (4) blood spattering that indicated that the homicide occurred in the vehicle and that the shot came from the driver's side where Appellant was seated.

After conducting a search of the residence of Appellant, police found a letter written by him a day prior to the homicide in which he indicated that he planned to kill his wife and himself. The letter further related that Appellant would "be the last man that she'll ever make love to if this goes the way I want. If not, she'll be dead anyway. No one will look upon her beautiful face anymore. She will have a closed casket viewing." (Transcript of sentencing hearing, 2/22/05, at 47).

After performing an autopsy on the body of Debra, Dr. Samuel Land, a forensic pathologist, determined the cause of death to be "gunshot wounds to head and chest" and the manner of death to be homicide. (*Id.* at 62).

Notwithstanding the contention of Appellant that he killed Debra in the heat of passion, the above evidence was sufficient

to prove beyond a reasonable doubt that Appellant committed the homicide willfully, deliberately, and with premeditation. The facts with which the trial court was presented leave little, if any, room for inference to the contrary; in fact, Appellant cites none in support of his contention. The suicide letter written one day prior to the homicide clearly reflects premeditation on the part of Appellant, as does his abduction of Debra from her place of employment, having armed himself with a powerful handgun.

■ With respect to the alternative contention of Appellant, that he was insane at the time of the homicide, there was sufficient evidence to the contrary to support his first-degree murder conviction. Pursuant to Section 315(a) of the Crimes Code, "[t]he mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense." 18 Pa.C.S. § 315(a). Consistent with the common law M'Naughten test for legal insanity, Section 315(b) defines "legally insane" as "laboring under such a defect of reason, from disease of the mind, as not to know" either: (1) the nature and quality of the act; or (2) that the act was wrong. 18 Pa.C.S. § 315(b).

Appellant underwent two mental health evaluations prior to his plea and sentence.[8] Nevertheless, Appellant cites no aspect of the record suggesting that, at the time he shot Debra, a mental illness precluded him from knowing either the nature or quality of the act of killing her or that killing her was wrong. At trial, Appellant failed to present any testimony or other evidence indicating that he was legally insane at the time of the homicide. Therefore, Appellant cannot avail

8. Appellant was examined by Dr. Hume on February 2, 2005 and by forensic psychiatrist Richard Fischbein, M.D. (Dr. Fischbein) on September 13, 2004. In his competency hearing testimony, Dr. Hume indicated that he reviewed a report prepared by Dr. Fischbein prior to examining Appellant himself. Whereas the record indicates that the trial court appointed Dr. Hume to examine Appellant (*see* Transcript of competency hearing, 2/8/05, at 33), it is unclear as to who retained Dr. Fischbein.

himself of this defense and the first-degree murder conviction must stand, as the Commonwealth produced sufficient evidence to support it, as explained above.

## II.  Voluntariness of the Plea

In his second claim of error, Appellant argues that the trial court improperly imposed the death penalty because he did not enter his guilty pleas knowingly, voluntarily, and intelligently.  More specifically, Appellant posits that "he was not given information by his attorney that his sentence could have been twenty years to life in prison." (Brief of Appellant at 7). As Appellant himself admits in his Brief, he "is essentially arguing ineffective assistance of counsel which would need to be raised in a future appeal." (*Id.*); *see Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726, 738 (2002) ("[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."). Accordingly, we dismiss the instant claim without prejudice to Appellant's ability to raise it in pursuing post-conviction collateral relief.

## III.  Competency

In his third claim of error, Appellant challenges his death sentence by arguing that he was incompetent at trial. According to Appellant, he was not competent to enter a plea, to stipulate to the aggravating circumstance that the Commonwealth presented, or to direct his counsel not to present evidence of any mitigating circumstance.  Without citing any evidence in support of his claim, Appellant simply concludes that "[e]ven though both doctors [who examined him] concluded that Appellant was competent, Appellant had a history of mental health issues and/or treatment and was not competent to enter a plea, stipulate to the aggravating circumstance of kidnapping and/or request the death penalty."  (Brief of Appellant at 8).

Competence to plead guilty depends upon whether the defendant has the "ability to comprehend his position as one accused of murder and to cooperate with his counsel in

making a rational defense," *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159, 160 (1967); *accord Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696, 699 (1992), and whether he has "sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and [has] a rational as well as factual understanding of the proceedings against him." *Commonwealth v. Minarik*, 493 Pa. 573, 427 A.2d 623, 628 (1981) (quoting *Commonwealth v. Turner*, 456 Pa. 309, 320 A.2d 113, 114 (1974)); *accord Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891, 899 (1997). The determination of competency is a matter for the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1270 (1989).[9]

Prior to the competency hearing that the trial court held on February 8, 2005, Appellant was thoroughly examined by Dr. Hume, a psychiatrist with more than forty years of practical experience. In the report that he submitted to the trial court, Dr. Hume concluded that Appellant

> understood the nature and character of the charges against him, understood the potential consequences were he found guilty of the charges[,] and had and was able to explore extensively with counsel various potential circumstances or situations or defenses that might be available to him, such that I felt he was competent to proceed with trial.

(Transcript of competency hearing, 2/8/05, at 42–43). The trial court credited the testimony of Dr. Hume and concluded therefrom that Appellant was "competent to stand trial or to enter a plea or to participate in any further legal proceedings

---

9. An abuse of discretion exists when

> the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000) (citations and internal quotation marks omitted).

with his attorneys" and that he "kn[ew] and underst[ood] the nature and consequences of the charges filed against him." (*Id.* at 46).

The testimony of Dr. Hume provides adequate support for the determination of the trial court that Appellant was competent to plead guilty to first-degree murder. Moreover, Dr. Hume's particular conclusion that Appellant "explore[d] extensively with counsel" all possible defenses justifies the trial court's conclusion that Appellant was competent to stipulate to the aggravating circumstance that the Commonwealth had presented and to direct his counsel not to present any mitigating circumstances.[10] Therefore, the trial court did not abuse its discretion in determining the competence of Appellant accordingly.

## IV. Constitutionality of the Sentence

Finally, Appellant argues that the trial court erred in imposing upon him the sentence of death "because a stipulated-to death penalty is unconstitutional." (Brief of Appellant at 8). According to Appellant, *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), requires the sentencing court to consider mitigation evidence before it may impose the death penalty.[11]

In *Commonwealth v. Michael*, 562 Pa. 356, 755 A.2d 1274 (2000) (plurality opinion), we were presented with the exact

10. Although acknowledging that "both doctors concluded that Appellant was competent," Appellant nonetheless emphasizes his "history of mental health issues and/or treatment." (Brief of Appellant at 8). As we previously have noted, however, the mere fact that a defendant has experienced mental illness in the past does not preclude a trial court from finding that he is competent to stand trial or enter a guilty plea. *See Commonwealth v. Santiago*, 579 Pa. 46, 855 A.2d 682, 697 (2004).

11. Similarly, Appellant cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), for the proposition that, before the death penalty can be imposed, the Commonwealth must prove any aggravating circumstances beyond a reasonable doubt. Although the reasonable doubt standard is indeed applicable to aggravating circumstances, 42 Pa.C.S. § 9711(c)(iii), the defense, by stipulating to an aggravating circumstance, effectively declares that the Commonwealth has proved such aggravator beyond a reasonable doubt. *See Commonwealth v. Rizzuto*, 566 Pa. 40, 777 A.2d 1069, 1088 (2001) ("A stipulation is a declaration that the fact agreed upon is proven.").

same constitutional claim that Appellant now raises. Contrary to the characterization of *Lockett* by both the appellant in *Michael* and Appellant in the instant case:

a plurality in *Lockett* concluded that 'the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kinds of capital case, not be precluded from considering **as a mitigating factor,** any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' [*Lockett*, 438 U.S. at 604, 98 S.Ct. 2954] (emphasis in original). The *Lockett* plurality prohibits statutes which preclude the sentencer from considering evidence of mitigation '**that the defendant proffers.**' *Id.* (emphasis added). Contrary to [A]ppellant's representation, the decision does **not** require a defendant to present mitigating evidence.

*Michael,* 755 A.2d at 1280.

Because Appellant declined to offer any mitigating evidence at his sentencing hearing, the trial court was presented with nothing against which to balance the one aggravating circumstance that the Commonwealth had asserted. Consequently, the death penalty was not unconstitutionally imposed upon Appellant in this case.

### V. Statutory Review

Pursuant to 42 Pa.C.S. § 9711(h)(3), we must affirm a death sentence unless we determine that:

(i) the sentence was the product of passion, prejudice or any other arbitrary factor; or

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d).

Our review of the record of the case *sub judice* has revealed no indication that Appellant's Judgment of Sentence was the product of passion, prejudice, or any other arbitrary factor. Moreover, the evidence supports the finding that Appellant committed the killing while in the perpetration of kidnapping,

a first-degree felony [12] to which Appellant entered a plea of *nolo contendere*. Appellant, in fact, stipulated to this aggravating circumstance at the sentencing hearing. (Transcript of sentencing hearing, 2/22/05, at 8–9).

## CONCLUSION

The evidence *sub judice* supports Appellant's conviction of first-degree murder as well as the trial court's finding of the aggravating circumstance of a homicide committed during the commission of a felony. The Judgment of Sentence of the trial court is therefore AFFIRMED.[13]

Justices CASTILLE, EAKIN and BAER join the opinion.

Chief Justice CAPPY and former Justice NIGRO did not participate in the consideration or decision of this case.

Justice SAYLOR files a concurring opinion.

## CONCURRING OPINION

Justice SAYLOR.

I join the majority opinion and write primarily to comment concerning how the Court will accomplish its self-imposed obligation to review the sufficiency of the evidence in capital cases, now that it has approved the practice of accepting pleas of guilt to the charge of first-degree murder. *See Commonwealth v. Singley*, 582 Pa. 5, 868 A.2d 403 (2005).

In implementing the sufficiency review in this case, the majority follows the logical course of relying on the only evidentiary record that there is, namely, that of the penalty hearing. In other cases, however, the penalty-hearing record may not be adequate to serve as a basis for sufficiency review, since a number of aggravating circumstances do not pertain

12. *See* 18 Pa.C.S. § 2901(b).

13. Within ninety days of the date that the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the Office of the Governor the full and complete record of the trial court's sentencing hearing and imposition of sentence as well as this Opinion and Order pursuant to 42 Pa.C.S. § 9711(i).

directly to, or require only consideration of limited aspects of, the killing underlying the first-degree murder conviction. *See, e.g.,* 42 Pa.C.S. § 9711–(d)(1), (16), (17) (pertaining to victim characteristics, such as age, occupation, and pregnancy); 42 Pa.C.S. § 9711–(d)(9) (significant history of felony convictions involving violence); 42 Pa.C.S. § 9711–(d)(10), (11) (conviction of another murder or offense implicating a life sentence or the death penalty).

For this reason, I believe that a logical corollary of the Court's decision to approve the acceptance of pleas of guilt to first-degree murder is the understanding that it simply may not always be possible to conduct traditional sufficiency review relative to the underlying conviction in the plea cases. Accordingly, in such cases it should be appropriate to center the obligatory review on the factual basis for the plea as developed during the course of the plea colloquy, in line with the general approach for reviewing pleas to other offenses, *see generally Commonwealth v. Hines,* 496 Pa. 555, 437 A.2d 1180 (1981). Traditional sufficiency review should apply, however, concerning aggravating circumstances developed on the record at the penalty hearing.

Finally, on the policy question raised by Appellant of whether a defendant should be allowed to effectively stipulate to the imposition of the death penalty, while I have previously expressed reservations concerning whether, and under what circumstances, this should be permitted, *see, e.g., Commonwealth v. Michael,* 562 Pa. 356, 375–78 & n. 1, 755 A.2d 1274, 1284–86 & n. 1 (2001) (Saylor, J., dissenting), I find Appellant's one-paragraph argument on the subject in this case insufficient to support a reevaluation of the Court's existing precedent.