**Commonwealth v. Lichtenwalner**

*Stephen M. Van Natten, chief deputy district attorney,* for Commonwealth.

*Robert Long,* for defendant.

McGINLEY, *J.,* May 19, 2010—This is a motion for post-conviction collateral relief filed pro se by defendant on September 29, 2005 and amended by counsel on June 9, 2006.[1]

## PROCEDURAL HISTORY

On September 22, 1998, defendant pleaded guilty but mentally ill to charges of criminal conspiracy (nine counts), arson (nine counts), risking a catastrophe (four counts), and terroristic threats (two counts) in relation to a series of barn burnings and brush fires that took place in rural northern Lehigh County and Northampton County in June and August 1997. In return, an additional five counts of criminal conspiracy, 11 counts of arson, 10 counts of risking a catastrophe, as well as one count of cruelty to animals were not pursued by the Commonwealth. The Commonwealth and defendant agreed to run certain counts concurrent and to a binding mini-

---

1. As discussed more fully in the procedural history, defendant's PCRA was stayed for a lengthy period of time due to his incompetence.

mum sentence in the standard range on several counts. It was also agreed that no limit would be placed on sentencing on four specific counts of arson. There was no other agreement with the exception that the Commonwealth would not oppose a total minimum of 22 years on the four counts of risking a catastrophe, eight counts of arson, and eight counts of criminal conspiracy contained in case number 2881/1997.

On November 30, 1998, we held a hearing pursuant to 42 Pa.C.S. §9727 (disposition of persons found guilty but mentally ill), at which we found that defendant met the criteria for a plea of guilty but mentally ill pursuant to 42 Pa.C.S. §9727. (N.T., defendant's sentencing hearing, November 30, 1998, p. 8.) Defendant was then sentenced to a cumulative term of 29-58 years imprisonment in a state correctional institution, such confinement to include appropriate treatment for his diagnosed mental illness. The sentence was in conformity with the plea agreement. The minimums were also within the standard range of the sentencing guidelines on all but two cases.[2]

Defendant filed a post-sentence motion to modify sentence on December 9, 1998, alleging the sole ground that the sentence imposed is excessive in light of the

---

2. The court put on the record that the sentence on the two counts of terroristic threats was in the aggravated range of the sentencing guidelines because the charge derived from two separate bomb threats made to a high school, Northern Lehigh. Similarly, the sentence on one of the counts of arson was a minimum sentence in the aggravated range because of the destruction of animals which resulted (two horses died). (N.T., defendant's sentencing hearing November 30, 1998, pp. 60-65.)

disparity of the sentence given his co-defendant.[3] (Defendant's motion to modify sentence, filed December 9, 1998, par. 3.) We denied defendant's motion by order of December 16, 1998. Defendant filed a notice of appeal on December 30, 1998. The appeal was dismissed by order of the Superior Court of Pennsylvania on October 22, 1999 due to appellant's counsel's failure to file a brief.

Defendant filed his pro se motion for post-conviction collateral relief on September 29, 2005. By order dated October 5, 2005, we appointed Robert Long, Esquire, to represent defendant; counsel was given 60 days to file an amended petition. Attorney Long filed a request to hire expert and request to extend deadline and both requests were granted by orders dated November 30, 2005. A second request to extend deadline was granted by order dated March 14, 2006. On June 9, 2006, Attorney Long filed an amended PCRA petition as well as a petition to stay the proceedings. Attached to the petition to stay was an evaluation of Dr. Frank Dattilio, in which Dr. Dattilio opined that defendant was incompetent to proceed with his hearing on the PCRA. The Commonwealth was not opposed to the stay, and by order dated December 21, 2006, the stay was granted.

By order dated June 29, 2009, we denied defendant's pro se petition for removal of counsel and appointment

---

3. Co-defendant, Michael Meleschuk, was sentenced to a cumulative term of two and one-half—five years less one day imprisonment in Lehigh County Prison to be followed by 35 years probation supervision for his role in the crimes. (Case numbers 2886, 2887/1997, 330/1998.)

of new counsel. We further ordered Attorney Long to take steps for a new competency evaluation of defendant. A competency hearing was held, and on January 11, 2010, defendant was found competent to assist counsel in his PCRA petition. A PCRA hearing was scheduled for and held March 26, 2010.

## FACTUAL HISTORY

In our statement of reasons pursuant to 1925(a) filed June 18, 1999, we set forth the following factual history. During the summer of 1997, rural northern Lehigh County, as well as parts of Northampton County, was victimized by a series of barn burnings and brush fires. This reign of terror was comprised of deliberately-set fires occurring on June 13-14 (brush fires/bird pen), June 14 (two brush fires, barn fire), June 16 (barn fire), August 18 (barn fire, vacant house set ablaze), August 21 (two barn fires), August 22 (another two barn fires), August 23 (house under construction set afire), and August 24 (barn fire).

A number of the barns' owners testified at defendant's sentencing hearing as to the loss they experienced. For example, the Costello barn, which was destroyed on August 22, 1997, had stood since 1874 and is irreplaceable. (N.T., defendant's sentencing hearing, November 30, 1998, pp. 12-13.) Mrs. Dawn E. Costello testified as to the sheer terror she felt as her husband raced into the burning barn in an attempt to save it. (*Id.* at 14-15.) Mr. Costello narrowly escaped the barn's flaming roof collapsing on him as he drove one of the family's tractors from the burning structure. (*Id.* at 17.) In addition to the

loss of their historic treasure, the Costellos incurred a monetary loss of $55,428 which was not covered by insurance. (*Id.* at 15.) Six volunteer firefighters spent two hours and used 8,000 gallons of water in extinguishing this blaze, which was determined to have been intentionally set by lighting a hay bale located just inside the door of the barn. (Defendant's pre-sentence investigation report, prepared November 20, 1998.)

The Zellner barn, destroyed on June 14, 1997, had been in the Zellner family for over 80 years, and the victims had a great deal of sentimental value for it. (N.T., defendant's sentencing hearing, November 30, 1998, p. 22.) The barn itself contained an old wooden grinding wheel that was extremely rare. (*Id.* at 23.) Eighteen volunteer firefighters spent five and a half hours and 104,000 gallons of water extinguishing this blaze, which state police investigation determined had been intentionally set in a hay storage area inside the west wing of the barn. (Defendant's pre-sentence investigation report prepared November 20, 1998.) The investigation found that a liquid accelerant was utilized in the setting of this fire. *(Id.)*

Paul Kovalchick testified that he sustained a loss in excess of $40,000, after insurance, from the fire set to his barn on August 18, 1997. (N.T., defendant's sentencing hearing, November 30, 1998, p. 29.) Mr. Kovalchick testified that he hurriedly wet down the roof of his adjoining home as sparks from the barn blew onto it. *(Id.)* Linda Kovalchick, his wife, testified to the sheer horror of not knowing where her husband was as she ushered the couple's sleepy children out of their home. (*Id.* at

32.) The loss of the Kovalchick barn was made even more devastating by the fact that defendant could be heard laughing at the scene. (*Id.* at 34.) The police investigation determined that the fire was intentionally started among two bales of hay in the barn. (Defendant's pre-sentence investigation report prepared November 20, 1998.) Records of the Germansville Fire Department indicate that 21 volunteer firefighters worked for six hours and used 450,000 gallons of water to extinguish this fire. *(Id.)*

Glenn Williams, the owner and operator of Riverview Farms, lost a barn which had stood since 1930, and at the time of the fire on August 24, 1997 contained "probably the best hay made in the last 20 years." (N.T., defendant's sentencing hearing, November 30, 1998, p. 37.) This loss severely hampered the feeding of his 700 head of cattle. *(Id.)* Mr. Williams also testified to the enormous problems he had in securing new insurance after his original insurer gave him notice of its intent to cancel his policy. (*Id.* at 38.) What's more, he had to endure the humiliation of originally being suspected by his insurance company of having committed the arson himself. (*Id.* at 40.) The records of the Lehigh Township Volunteer Fire Company indicated that 780,000 gallons of water were used to extinguish this fire. (Defendant's pre-sentence investigation report prepared November 20, 1998.) In addition, firefighters were dispatched two additional times as the structure rekindled later in the day. *(Id.)*

These barns were important to all the county as monuments to the rural culture which is a treasured part of Lehigh County's heritage.

After a Pennsylvania State Police investigation, defendant was arrested along with his co-defendant on August 27, 1997.

## ISSUES

There are two issues regarding defendant's PCRA petition. First, whether defendant's PCRA petition is timely under one of the exceptions to the one-year filing deadline. Secondly, whether defendant's guilty plea is invalid due to defendant's asserted incompetency.

## DISCUSSION

Petitions for collateral relief in criminal cases in Pennsylvania must be filed under the Post Conviction Relief Act, 42 Pa.C.S. §9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis."). PCRA petitions must be filed within one year of the judgment of sentence becoming final:

"(b) Time for filing petition.—

"(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

"(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the constitution or laws of this Commonwealth or the constitution or laws of the United States;

"(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

"(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S. §9545.

The Act does allow, as indicated, for three exceptions to the one-year requirement. 42 Pa.C.S. §9545(b)(1)(i), (ii) and (iii). However, even those exceptions must be raised within 60 days "of the date the claim could have been presented." 42 Pa.C.S. §9545(b)(2).

Judgment became final in this matter on November 21, 1999, one month after the Superior Court denied defendant's appeal. Defendant filed his pro se motion for post-conviction collateral relief on September 29, 2005, well after the one-year deadline.

Defendant asserts the second statutory exception to the one-year requirement applies in this case: "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. §9545(b)(1)(ii).

Pursuant to *Commonwealth v. Cruz,* 578 Pa. 325, 852 A.2d 287 (2004), mental incompetence may qualify under the "after-discovered evidence" exception if defendant can prove (1) he was and remained incompetent throughout the period during which his right to file a PCRA petition lapsed; and (2) that his current petition was timely filed within 60 days of his becoming suffi-

ciently competent to ascertain the facts upon which his underlying claims are predicated.

On March 26, 2010, we heard the testimony of Frank M. Dattilio Ph.D., a clinical and forensic psychologist, regarding defendant's competency in order to determine whether defendant's PCRA petition falls within the exception to the one-year time bar. Dr. Dattilio testified that defendant was not competent from September of 1998 to April of 2006. He opined that defendant was competent when he stood trial but deteriorated and decompensated subsequent to that date up until the time he was evaluated in 2006. He further testified that it was highly unlikely that defendant was competent for one year cumulatively during the period of time he was incarcerated. N.T., PCRA hearing, March 26, 2010, pp. 9-11.

Dr. Dattilio's uncontradicted testimony establishes that defendant was incompetent from September 1998 through April 2006. This clearly meets the first requirement that defendant was incompetent throughout the period during which defendant's right to file a PCRA petition lapsed. We find this testimony is also sufficient to satisfy the second inquiry whether the petition was filed within 60 days of defendant becoming sufficiently competent to ascertain facts upon which his underlying claims are predicated. Defendant filed his pro se motion for post-conviction collateral relief on September 29, 2005. Pursuant to Dr. Dattilio, the pro se motion was filed prior to defendant becoming sufficiently competent and, in fact, the PCRA matter was stayed during defendant's continued incompetency. The motion, although perhaps premature, was not in jeopardy of being filed

after the 60-day time period allotted to qualify under the exception.

We find that defendant's amended PCRA petition falls within an exception to the one-year deadline and is timely pursuant to 42 Pa.C.S. §9545(b)(1)(ii) and (b)(2).

We now address the merits of defendant's amended PCRA petition. Defendant asserts that he is entitled to relief pursuant to 42 Pa.C.S. §9543(a)(2)(iii), and accordingly, he must plead and prove by a preponderance of the evidence that his sentence resulted from a plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent. Defendant's amended PCRA petition asserts that defendant's guilty plea was not knowing or voluntary because he was mentally incompetent at the time it was entered.

Competence to plead guilty depends upon whether the defendant has the ability to comprehend his or her position as one accused of a crime and to cooperate with counsel in making a rational defense. *Commonwealth v. Frey,* 588 Pa. 326, 904 A.2d 866 (2006), *cert. denied,* 127 S.Ct. 1157 (U.S. 2007).

Dr. Dattilio testified at the PCRA hearing that defendant was competent during his guilty plea. Dr. Dattilio, reading from his 2006 report of defendant, testified:

"In reviewing my previous psychological evaluation dated August 5, 1998, although it was not the request of the evaluation at the time to determine his competency, based on the notes and the report, Mr. Lichtenwalner was competent at that time to stand trial. It appears more

likely that the stress of the incarceration and the stress of his psychotic illness to being sentenced to a lengthy period of time incarcerated has contributed to such a severe state of mental illness that he has, unfortunately, remained incompetent since that time." N.T., PCRA hearing, March 26, 2010, p. 28.

Dr. Dattilio further testified that he automatically assessed whether defendant was competent at the time of the guilty plea; he felt that defendant was competent, and it is still his opinion today that defendant was competent at that time. N.T., PCRA hearing, March 26, 2010, pp. 29, 31.

Also at the PCRA hearing, during cross-examination, defendant testified as follows:

"Q. And when you pled guilty do you remember the court asking you questions about the charges—if you understood the charges?

"A. Yeah.

"Q. And you did?

"A. Yeah.

"Q. And you understood that Attorney Seiger was there to represent you at that time?

"A. Yeah.

"Q. And you understood that you were entering a guilty plea at that time?

"A. Yeah.

"Q. And you understood that you would be sentenced based on your guilty plea?

"A. Yeah.

"Q. And did you understand at that time that that could include a state prison sentence?

"A. Yeah.

"Q. And Attorney Seiger didn't force you to do that?

"A. No.

"Q. You chose to do that?

"A. My parents told me I had to do it, so—

"Q. Okay. So you talked to your parents and you listened to your parents?

"A. I was afraid of losing my family, so I did what they told me to do.

"Q. As you sit here today,—you're admitting to at least to committing four arsons?

"A. Yeah.

"Q. There were many others that you were charged with?

"A. Yeah.

"Q. And you entered guilty pleas, guilty but mentally ill pleas, in all of those cases, right?

"A. I didn't know law back then. I know law now.

"Q. Okay. Nobody forced you to do that though?

"A. No." N.T., PCRA hearing, March 26, 2010, pp. 24-26.

Defendant further testified that he did actually commit four of the arsons. N.T., PCRA hearing, March 26, 2010,

pp. 21, 25. He generally denied one of the fires, stating it could not have been him because the fire started at four in the morning and he had an 11:30 curfew. N.T., PCRA hearing, March 26, 2010, p. 21.

In examining the evidence presented at the PCRA hearing, we find that defendant did not prove by a preponderance of the evidence that his guilty plea was unlawfully induced, and that the inducement caused him to plead guilty, although innocent. We are convinced that defendant was competent at the time he entered his guilty plea, and that he did so knowingly and willingly.

In addition, he openly admitted to committing four of the arsons for which he has been sentenced. Accordingly, defendant's amended PCRA petition is denied.

## ORDER

And now May 19, 2010, upon consideration of defendant's amended motion for post-conviction collateral relief filed with the clerk of courts—criminal division on June 9, 2006, hearing thereon and for the reasons set forth in the accompanying opinion, it is hereby ordered that said amended motion for post-conviction collateral relief is denied.

The defendant is advised that he has the right to appeal from this order to the Superior Court of Pennsylvania by filing a notice of appeal within 30 days of the date of this order.

The clerk of courts is directed to serve a copy of this notice upon the district attorney, counsel for the defendant and upon the defendant certified mail, return receipt requested.