**Commonwealth v. Parsons**

14

C.P. of Berks County, no. CP-06-CR-3312-2004.

*Adrian S. Shchuka,* for Commonwealth.
*Douglas J. Waltman,* for defendant.

PARISI, *J.*, December 6, 2010—On January 27, 2006, the defendant entered into a negotiated plea bargain stemming from his sexual conduct with an underage victim between January 2002 and April 2003. The defendant and the victim are both mentally challenged. During the period of their sexual relationship, the defendant was 19-20 years old, while the victim was 12-13 years old. The plea was tendered pursuant to an agreement wherein the Commonwealth would dismiss the more serious charge of rape in exchange for the defendant pleading guilty to one count of statutory sexual assault[1] and one count of corruption of minors[2]. In addition to this agreement, the defendant agreed to accept a sentence of six to 23 months incarceration in a county facility, followed by five years of probation. On the record during the guilty plea colloquy, this court questioned the defendant about his understanding of the nature of the charges he was facing, his understanding of the terms of the plea agreement with respect to the charges and sentence, and his understanding of the rights that he was waiving.

After this court considered the responses provided by the defendant and his attorney, the court found that

---

1. 18 Pa. C. S. A. §3122.1.
2. 18 Pa. C. S. A. §6301.

the defendant entered into the agreement knowingly, intelligently, and voluntarily. This court accepted the agreement with respect to the charges. This court did not indicate to either party whether it would accept the portion of the plea bargain regarding sentencing.[3]

The defendant's attorney, Kevin Feeney, Esquire (trial counsel), subsequently made a request to defer sentencing until after the completion of a PSI. Sentencing was scheduled for April 4, 2006. At the sentencing hearing, trial counsel challenged the sentencing term arguing that this was not a "great plea agreement" for his client with respect to the sentence portion in view of the fact that the victim lied about her age and that six months in prison would strip the defendant of his support system. Trial counsel also presented a psychological report which indicated it was likely that a prison sentence would result in the defendant being victimized given his mental deficiencies. The Commonwealth objected to these remarks and asked this court to impose the sentence agreed upon by the parties. After considering the relevant circumstances, this court imposed a sentence of five years probation for the statutory sexual assault count, including a three-month sentence of electronic monitoring, followed by another five years of probation on the corruption of minors count. The Commonwealth filed a motion to withdraw the plea, which this court denied. The Commonwealth subsequently filed a timely notice of appeal to the Superior Court

---

3. This court took the position that the agreement between the defendant and the Commonwealth were two-fold: the charge agreement and the sentencing agreement, although the two portions of the agreement were collectively referred to as the plea agreement. The Superior Court disagreed and remanded.

alleging this court failed to sentence the defendant in accordance with the negotiated plea agreement.

On April 9, 2009, the Superior Court ruled that this court's actions constituted an acceptance of the plea agreement both as to the charges and the specific sentence and that it was error to permit the defendant to lodge an untimely challenge to the sentencing portion of the plea bargain. See *Commonwealth v. Parsons*, 969 A.2d 1259 (Pa. Super. 2009). The Superior Court remanded the case for imposition of the sentence contained in the parties' plea bargain. *Id.* at 1272.

On remand, the defendant filed a motion to withdraw his guilty plea prior to this court imposing the sentence under the original plea bargain pursuant to the Superior Court's directive. On August 11, 2010, an evidentiary hearing was held. This court denied the defendant's motion on August 25, 2010. On September 17, 2010, the defendant was sentenced in accordance with the plea bargain.[4]

On October 4, 2010, the defendant filed a post-sentence motion to withdraw his guilty plea which this court subsequently denied.[5] The defendant filed the instant appeal on October 15, 2010, wherein he raises the following claims:

1. Whether the court erred in denying the defendant's request to withdraw his guilty plea by finding that defendant's plea of guilty was entered knowingly,

---

4. The defendant was given credit for the time he spent on probation after he was originally sentenced for the probationary sentence imposed on the corruption of minors count at re-sentencing.

5. This court granted the defendant's request for bail pending the outcome of his appeal.

intelligently, and voluntarily?

2. Whether the court erred in not approving simply the voluntariness of the plea itself, but the entirety of a plea agreement and sentence prior to being informed of the actual and relevant circumstances of the case?

3. Whether the court erred in denying the defendant's request to withdraw his guilty plea where the court informed the defendant that he could withdraw his guilty plea should the court reject the plea agreement and impose a different sentence, which is precisely what happened: the court rejected the plea agreement, imposed a different sentence, and then refused to permit defendant to withdraw his plea?

4. Whether the court erred in denying defendant's request to withdraw his guilty plea where the equitable circumstances of this unique case require such in the interest of justice, to wit: a mentally retarded young man has been determined by the court system to have, de facto, possessed greater understanding of the nature of the guilty plea and sentence proceedings than the sentencing court and elements of the court system, the prosecutor, or any of defendant's prior counsel, none of whom are in even remote alignment regarding the legal consequences of the court's coincident acceptance and rejection of the plea agreement?

Defendant's concise statement of errors complained of on appeal, 10/27/10.

Before this court addresses the merits of the defendant's claims that it erred by not permitting him to withdraw his guilty plea, it notes that a lower court must obey the

directive of an appellate court in proceedings on remand. See Pa. R. A. P. 2591(a); *Commonwealth v. McMillan*, 545 A.2d 301, 305 (1988). In the present case, the Superior Court specifically directed this court, to impose the sentence contained in the parties' plea bargain on remand. *Parsons*, 969 A.2d at 1272. Thus, this court's hands were essentially tied as it could not depart from the Superior Court's directive, despite the defendant filing motions to withdraw his guilty plea on remand. Nevertheless, we will consider the merits of the claims which the defendant raises on appeal.

This court will address the defendant's first and second claims together as they attack the validity of the defendant's plea bargain.

There is no absolute right to withdraw a guilty plea and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court. *Commonwealth v. Muhammed*, 794 A.2d 378, 382 (Pa. Super. 2002). A post-sentence motion to withdraw a guilty plea should be denied absent a showing of a manifest injustice. *Commonwealth v. Shaffer*, 449 A.2d 677 (Pa. Super. 1982). A plea rises to a level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently. *Commonwealth v. Pantalion*, 957 A.2d 1267, 1271 (Pa. Super. 2008).

Whether a defendant entered into their plea knowingly, voluntarily, and intelligently requires a totality of the circumstances analysis, but the court must find the defendant understands: (1) the nature of charges to which he is pleading guilty; (2) the factual basis for plea; (3) his right to a trial by jury; (4) the presumption of innocence;

(5) the permissible ranges of sentences and fines possible; and (6) that the judge is not bound by the terms of the agreement unless he accepts it. *Commonwealth v. Watson,* 835 A.2d 786 (Pa. Super. 2003).

Pennsylvania law presumes a defendant who enters a plea of guilty is aware of what he was doing and bears the burden of proving otherwise. *Commonwealth v. Pollard,* 832 A.2d 517 (Pa. Super. 2003). A defendant is bound by the statements he makes at the guilty plea colloquy and may not successfully assert any claims that contradict those statements. *Muhammed,* 794 A.2d at 378. Thus, when the record establishes a guilty plea colloquy was conducted during which the defendant states he understands the nature of the charges against him, the voluntariness of the plea is established. *Commonwealth v. Stork,* 737 A.2d 789, 790 (Pa. Super. 1999).

There is no per se rule which invalidates a guilty plea made by a defendant who is "in some way mentally deficient." *Commonwealth v. Melton,* 465 Pa. 529, 534, 351 A.2d 221, 224 (Pa. 1976). Consequently, a low I.Q. alone is insufficient to establish the involuntariness of a guilty plea. *Shaffer,* 449 A.2d at 681. Moreover, a defendant is competent to enter a guilty plea if he has the ability to comprehend his position as one accused of the crimes charged and to cooperate with his counsel in making a rational defense. *Commonwealth v. Frey,* 588 Pa. 326, 336-37, 904 A.2d 866, 872 (Pa. 2006). In other words, the defendant is competent to enter a plea if he has the ability to consult with his attorneys with a reasonable degree of understanding and he has a reasonable and factual understanding of the proceedings against him. *Id.*

The record reflects that the defendant was both competent to enter a guilty plea and did enter his guilty plea knowingly, voluntarily, and intelligently. The defendant participated in a complete and thorough guilty plea colloquy wherein this court made specific inquiries into each of the relevant areas bearing on the validity of the defendant's guilty plea. This court reviewed each required area of inquiry and asked the defendant if he understood. The defendant stated that he understood (N.T. Guilty Plea Colloquy, 1/27/06, pp.4-10). The charges were explained to the defendant in basic, plain-English and the defendant indicated he understood them. The defendant also indicated he understood that he was giving up additional rights by pleading guilty, such as filing pretrial motions and the right to a jury trial. At no time during the guilty plea colloquy did the defendant or his attorney indicate that the defendant did not understand the factual allegations against him, the nature of the charges, or the terms of the plea agreement regarding the charges and the specific sentence to be imposed. Nor did the defendant provide any indication that he was acting under duress or that he had been pressured into pleading guilty by anyone.

The record further reflects that the defendant completed a statement accompanying defendant's request to enter a guilty plea with the assistance of trial counsel. Given the defendant's limited reading ability, trial counsel stated that he read the entire document to the defendant. The defendant said that he understood the material contained in this document and did not have any questions about its contents.

At the hearing on the defendant's motion to withdraw his guilty plea prior to re-sentencing, the defendant

presented testimony regarding his limited mental capacity, including testimony that he could not read or write and that he was enrolled in special education programs throughout his schooling due to constant learning disabilities. However, no evidence presented at this hearing established the defendant's plea was entered involuntarily. Despite his limited mental capacity, the defendant was able to obtain a high school diploma and a driver's license. The defendant also acknowledged that trial counsel had informed him that he could change his plea if this court imposed a sentence different from the one agreed to with the Commonwealth.

Contrary to the defendant's assertion[6], this court was well aware of the defendant's mental limitations at the time it accepted the guilty plea to the charges[7] (N.T. Guilty Plea Colloquy, 1/27/06, p. 11). In fact, this court addressed the defendant's trial counsel about its concerns regarding the defendant's mental capacity at the guilty plea colloquy. Trial counsel indicated that he had met with the defendant almost every day of the week prior to the guilty plea colloquy and stated that he believed the defendant understood the plea bargain and what he was doing and that the defendant was competent to enter the plea. Moreover, the trial court was aware of the initial psychiatric evaluation report submitted by Dr. Larry Rotenberg on August 26, 2005. Dr. Rotenberg concluded the defendant understood the nature and objective of the criminal proceedings against him and was able to assist his attorney with his defense.

---

6. See paragraph 2 of the defendant's concise statement.

7. Additionally, this court was aware that the defendant could not read or write beyond writing his name and a few other basic words at the time of the guilty plea colloquy (N.T. 1/27/06 at p. 2).

The defendant's mental limitations alone are not a reason to invalidate his plea. Based on the answers given by the defendant and his trial counsel during the guilty plea colloquy and the report submitted by Dr. Rotenberg, the defendant was competent to enter his guilty plea. Furthermore, this court was informed of the relevant circumstances regarding the factual basis for the plea and the defendant's mental capacity. After considering the above factors and the demeanor of the defendant, this court properly found that he entered his guilty plea knowingly, intelligently, and voluntarily.

The defendant's next claim of error is this court's denial of his requests to withdraw his guilty plea on remand because this court initially rejected the portion of the plea bargain with respect to the agreed upon sentence.[8]

This court informed the defendant at the guilty plea colloquy that he could withdraw his guilty plea if the court rejected the agreement and imposed a sentence different from the one agreed to by the parties. This court rejected the sentence portion of the plea bargain between the defendant and the Commonwealth and went on to impose a different sentence than the one contained in

---

8. A petition to withdraw a guilty plea which the defendant files for the first time on remand after his original judgment of sentence was appealed and was vacated by the Superior Court, but prior to the trial court resentencing him, is treated as a post-sentence motion to withdraw. *Commonwealth v. Muntz*, 630 A.2d 51, 54 (Pa. Super. 1993). As a result, the trial court must apply the post-sentence standard of "manifest injustice" when reviewing such requests to withdraw a guilty plea. *Id.* at 54. Thus, the defendant's motion to withdraw his guilty plea which he filed on remand prior to his resentencing in the present case was properly treated as a post-sentence motion to withdraw and fell under the scrutiny of the "manifest injustice" standard, as the defendant failed to request allowance to withdraw his guilty plea prior the imposition of his original sentence.

the plea bargain. However, the defendant did not attempt to withdraw his guilty plea prior to the Commonwealth filing its appeal challenging this court's rejection of the sentencing portion of the plea bargain. On remand, this court sentenced the defendant in accordance with the terms of the sentencing portion of the plea agreement pursuant to the Superior Court's directive. Consequently, the defendant was returned to the position in which he would have been had this court originally sentenced him under the terms of the sentencing portion of the parties' plea bargain. The defendant cannot now seek to withdraw his plea on grounds that this court imposed a sentence different from the one that he expected to receive under the plea bargain. Therefore, the defendant was not entitled to withdraw his guilty plea on this basis.

The defendant's final claim on appeal is that the interests of justice required the court to permit the defendant to withdraw his guilty plea due to the unique equitable circumstances of this case.

After considering the defendant's answers at the guilty plea colloquy and Dr. Rotenberg's report, this court was satisfied that the defendant understood what he was doing and that he was aware of the consequences of entering into the guilty plea, despite the defendant's low I.Q. Again, the defendant's limited mental capacity alone is insufficient to invalidate his guilty plea. The record establishes that trial counsel explained the plea bargain and its consequences to the defendant as well as the fact that this court could impose a different sentence. The defendant clearly indicated on the record that he understood this court was not required to accept the plea bargain and that he could withdraw his plea if this court imposed a

different sentence. Although the Superior Court ultimately overturned this court's rejection of the sentence portion of the plea bargain, this sequence of events did not affect the defendant's understanding of the nature of the guilty plea and sentencing proceedings at the time he plead guilty to the charges. After considering all of the circumstances of this case, the interests of justice did not require this court to permit the defendant to withdraw his guilty plea.

For the foregoing reasons, this court respectfully requests that the defendant's appeal be denied.