J-S75030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BILLY LANGLEY | |
| Appellant | No. 801 EDA 2016 |

Appeal from the PCRA Order February 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013927-2008

BEFORE:  BOWES, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                 **FILED DECEMBER 05, 2016**

Billy Langley appeals from the order of the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On October 21, 2009, Langley pleaded guilty to charges of third-degree murder, robbery, forgery under altered writings, theft by unlawful taking, possessing instruments of crime, and access device used to or attempted to be used to obtain services.[1]  At Langley's guilty plea hearing, the trial court conducted an extensive colloquy, which included inquiry into Langley's mental health.  Langley told the court that he was currently on a number of medications that helped him "understand better."  N.T.,

---

[1] 18 Pa.C.S. §§ 2502(c), 3701(a)(1)(i), 4101(a)(1), 3921(a), 907(a), and 4106(a)(1), respectively.

10/21/09, at 4. After the colloquy, the court accepted Langley's guilty plea, which the court found was knowing, intelligent, and voluntary. *Id.* at 25.

Immediately following the guilty plea, the trial court held a sentencing hearing. At the hearing, the court asked Langley's counsel, from the Defender Association of Philadelphia ("Defender Association"), if there was anything she wanted to tell the court about her client. *Id.* Counsel told the court that Langley "has had an ongoing mental health problem since the age of ten," *id.* at 25-26, and that although Langley had not been taking his medicine at the time of the crimes, he had complied with his medication regimen since entering prison, *id.* at 26-27. The court sentenced Langley to an aggregate term of 40 to 80 years' imprisonment. *Id.* at 27-37.

On October 29, 2009, Langley filed a *pro se* motion to withdraw his guilty plea. The trial court appointed new defense counsel for a hearing on Langley's motion. Counsel requested all mental health evaluations of Langley that were in the possession of the Defender Association. The hearing took place on March 15, 2010. Counsel from the Defender Association[2] informed the court that Langley's competency "while investigated, was not truly an issue." N.T., 3/25/10, at 6. He also said that no written report on Langley's competency had been prepared, but that the

---

[2] The attorney from the Defender Association who had represented Langley at the guilty plea hearing was unavailable to testify at the March 15, 2010 hearing. Another attorney from the Defender Association testified in her stead.

Defender Association had received an oral report from a psychologist. *Id.* at 7. The court instructed counsel from the Defender Association and Langley's newly appointed counsel to discuss the investigation into Langley's mental health. *Id.* at 11. After the discussion, Langley's new counsel told the court she was concerned about "[getting] pulled into a PCRA down the road" if she was to rely on the representations made by counsel from the Defender Association. *Id.* at 12.

Langley's counsel then told the court that Langley wished to withdraw his motion. *Id.* at 18. Langley, via a video conference call, testified that he and counsel had met one week earlier, and that at the meeting he had told counsel that he no longer wished to proceed with the motion. *Id.* at 22-23.[3] During subsequent questioning, Langley confirmed that the medication he was taking helped him to think. N.T., 3/15/10, at 27. Langley testified that he understood the consequences of withdrawing the motion, and informed the court that he wished to withdraw his motion to withdraw his guilty plea. *Id.* at 32-33. The trial court found that Langley made this decision knowingly, intelligently, and voluntarily. *Id.* at 33.

---

[3] Upon questioning by his counsel, Langley testified that he did not read, but that he understood English and that he understood what was happening at the hearing. N.T., 3/15/10, at 24-25. He also told the court that he had understood counsel during their meeting the previous week. *Id.* at 25.

On March 25, 2011, Langley filed a *pro se* PCRA petition, after which the PCRA court appointed counsel. On August 24, 2012, Langley filed an amended PCRA petition. On July 2, 2015, Langley filed a supplemental amended PCRA petition, to which he attached a report from Dr. Steven Samuel, who had performed a psychological evaluation of Langley.[4] In his report, Dr. Samuel opined that Langley had been unable to enter a knowing, intelligent, and voluntary plea at the time he entered his guilty plea. Dr. Samuel's Rpt., 6/22/15, at 6. On December 11, 2015, the Commonwealth filed a motion to dismiss Langley's PCRA petition. On January 12, 2016, the PCRA court sent Langley notice of its intent to dismiss his petition pursuant to Pennsylvania Rule of Criminal Procedure 907. On February 12, 2016, the PCRA court dismissed the petition without a hearing.[5] Langley filed a timely notice of appeal on March 14, 2016.[6] Both Langley and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.

_____

[4] Although the trial court had found that Langley was competent during his guilty plea colloquy, at PCRA counsel's request, and "out of an abundance of caution," the PCRA court allocated funds to counsel to hire Dr. Samuel for the purposes of a psychiatric examination and evaluation of Langley. Opinion, filed 4/15/16, at 6 ("1925(a) Op.").

[5] On February 2, 2016, Langley filed a motion to obtain new PCRA counsel, which the PCRA court granted. New PCRA counsel was appointed on February 29, 2016.

[6] Although 30 days after February 12, 2016 was Sunday, March 13, 2016, Langley had until Monday, March 14, 2016 to file a timely notice of appeal. 1 Pa.C.S. § 1908 (When last day of time period "fall[s] on Saturday
*(Footnote Continued Next Page)*

Langley raises the following question on appeal:

> Did the PCRA Court err in dismissing [Langley's] PCRA Petition without a hearing when PCRA counsel presented an expert psychologist report showing that [Langley] could not have engaged in a plea colloquy that was made knowingly, intelligently, and voluntarily?

Langley's Br. at 4. The issue as stated addresses only whether a hearing is required to determine whether Langley entered his guilty plea knowingly, intelligently, and voluntarily. Langley's brief, however, also argues that his counsel was ineffective, and accordingly, that a hearing is required to determine whether counsel was ineffective for allowing Langely to plead guilty despite his alleged incompetence to do so. Langley's Br. at 11.[7]

A PCRA court must hold a hearing only where the PCRA petition, or the Commonwealth's answer, raises an issue of material fact. ***Commonwealth v. Eichinger***, 108 A.3d 821, 849 (Pa. 2014) (citing Pa.R.Crim.P. 909(B)(1)-

*(Footnote Continued)* ─────────────

or Sunday, . . . such day shall be omitted from the computation."); Pa.R.A.P. 107 ("Chapter 19 of Title 1 of the Pennsylvania Consolidated Statutes (rules of construction) so far as not inconsistent with any express provision of these rules, shall be applicable to the interpretation of these rules . . . .").

[7] When analyzing claims for ineffectiveness of counsel, we begin with the presumption that counsel was effective. ***Commonwealth v. Spotz***, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness." ***Commonwealth v. Ligons***, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." ***Id.*** "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." ***Id.***

- 5 -

(2)).  "If a PCRA petitioner's proof is insufficient to establish a *prima facie* case, **or his allegations are refuted by the existing record**, an evidentiary hearing is unwarranted."  **Id.** at 849 (citations omitted) (emphasis added); **see also Commonwealth v. Morris**, 684 A.2d 1037, 1042 (Pa. 1996) (holding that evidentiary hearing is not required when there are no disputed factual issues).  "A PCRA court's decision denying a claim without a hearing may only be reversed upon a finding of an abuse of discretion."  **Commonwealth v. Walker**, 36 A.3d 1, 17 (Pa. 2011).  The Supreme Court of Pennsylvania has previously explained the abuse of discretion standard as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge.  Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions.  Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000) (citation omitted).

Langley claims that the opinions expressed in Dr. Samuel's report necessitate an evidentiary hearing on his competence to enter a guilty plea.  Disagreeing, the PCRA court found:

As a basis for his conclusion that petitioner was not able to enter into a knowing, intelligent, and voluntary guilty plea, Dr. Samuel stated that petitioner was not medicated at the time of the guilty plea. . . .

However, as demonstrated by his testimony, [Langley] **was medicated** at both hearings, and the medication helped petitioner to understand what was going on:

> The Court: And I believe you've been previously diagnosed as being bipolar from the time that you were ten years old?
>
> [Langley]: Yes.
>
> The Court: And are you presently - well, it says here that you are on medication in the last week: Haldol, Cogentin, and Prozac. Are you on anything today? The same medication?
>
> [Langley]: Yes, ma'am, yes.
>
> The Court: Does that help you understand better or prevent you from understanding?
>
> [Langley]: It helps me.
>
> The Court: Okay. If at any time I say something that you don't know what I'm talking about or you're unclear, don't just agree with me to agree. You can always talk to your attorney, Ms. Younis.

N.T. 10/21/09 at 4.

> [Defense counsel]: Are you on any medication that would interfere with your ability to understand what you're doing?

[Langley]: I'm on psych meds.

[Defense counsel]: Okay. And for the record, what are those meds?

[Langley]: Haldol, Cogentin, and depression medicine.

[Defense counsel]: And we talked - I'm sorry, because we did talk about this last week, you take those through the prison; is that correct?

[Langley]: Yes, ma'am.

[Defense counsel]: And they've been prescribed to you for how long?

[Langley]: Two years.

[Defense counsel]: There's been no change in your medication in the last week or so; is that correct?
[...]

[Langley]: No, ma'am.
[...]

[Defense counsel]: And that medication actually helps you to think is what you told me; is that true?

[Langley]: Yes.

N.T. 3/15/10, at 26-27.

1925(a) Op. at 8 (emphasis in original).

With respect to Dr. Samuel's report, the PCRA court found:

Dr. Samuel himself admits that [Langley's] schizophrenia is "in partial remission on medication." Dr. Samuel Report, 6/22/15, at 3. Further, Dr. Samuel states that [Langley's] diagnosis of sedative

- 8 -

use disorder and cannabis use disorder is "in sustained remission in a controlled environment." Id. Although Dr. Samuel states that, in his opinion, [Langley] was unable to enter into a knowing, intelligent, and voluntary guilty plea, he failed to state how [Langley's] diagnoses affected the voluntariness of his plea. As [Langley] was in custody at the time of his guilty plea and at the time he chose to withdraw his motion to withdraw his guilty plea, [Langley] was being administered the medications that helped him to think more clearly. [Langley] himself testified that he was taking his medication at those times, which helped control his illness and helped him to understand what was taking place. A review of the entire colloquy, as well as of the notes of testimony from the March 15, 2010 hearing, support the conclusion that [Langley] had been taking his medication and that he had a rational as well as factual understanding of the proceedings against him during the entirety of his plea. Even if he were not able to read the colloquy himself, everything was sufficiently explained to [Langley] by this Court, and had already been explained to him by his attorneys. N.T. 10/21/09 at 15-16.

*Id.* at 8-9. The PCRA court did not abuse its discretion by dismissing Langley's petition without a hearing. Dr. Samuel's report creates no issue of material fact necessitating an evidentiary hearing, as Langley's mental health history, by itself, did not preclude the trial court from finding that he was competent to stand trial or enter a guilty plea. ***Commonwealth v. Frey***, 904 A.2d 866, 873 n.10 (Pa. 2006). Similarly, the report creates no issue of material fact as to Langley's ineffectiveness of counsel claim, which fails if the underlying competency claim fails.

Moreover, Langley offers no explanation for the discrepancy between his statements at the hearings and Dr. Samuel's report regarding whether Langley was medicated at the time he entered his guilty plea. Langley states only that "medication ingestion is not a polar issue and it is these potential wrinkles and inconsistencies that ought to be explored at en [*sic*] evidentiary hearing." Langley's Br. at 12. Rather than indicating that Langley was confused or unable to comprehend what was happening at the hearings, the record establishes that Langley affirmed numerous times that he understood what was happening. N.T., 10/21/09, at 8-25, 40-41; N.T., 3/15/10, at 21-33. The PCRA court's decision to dismiss Langley's petition without a hearing was not an abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2016