J-S31006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIDIQUE A. MANSARAY | : | |
| | : | |
| Appellant | : | No. 943 EDA 2017 |

Appeal from the PCRA Order February 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001720-2012

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.: **FILED AUGUST 16, 2018**

Appellant, Sidique A. Mansaray, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the underlying facts of this case as follows:

> On November 11, 2011, shortly before 11 p.m. while inside of a residence at 912 North 43th Street in Philadelphia, [Appellant] was sitting in a room behind the victim, Titus Lowery. N.T. 6/24/13 at 20. There had been previous disagreements between the two. Id. [Appellant] had in his possession at the time a "sawed off" shotgun, which he shot one time, hitting the victim in the back. Id. The shotgun cup was recovered from the victim's body. Id. at 21. The victim was pronounced dead at the Hospital of the University of Pennsylvania. Id. The next day, [Appellant] was apprehended at 30th Street Station trying to board an Amtrak train to New Jersey. Id. at 21. After being taken down to the Homicide Unit of the Philadelphia Police Department, [Appellant] gave a statement, "almost completely taking responsibility for the crime." N.T. 6/24/13 at 21. A DNA analysis found [Appellant's] DNA on the shotgun. Id. Witnesses reported seeing [Appellant] run out of the house after the gun was fired.[14] Id.

<sup></sup>14 As this was a guilty plea, the Commonwealth merely recited the facts into the record.  These witnesses were not named.

PCRA Court Opinion, 7/7/17, at 3.

The PCRA court set forth the subsequent procedural history of this matter as follows:

On June 24, 2013, [Appellant] entered into a negotiated guilty plea[1] to murder of the third degree (H-3) and persons not to possess firearms (F-2).[2]  Notes of Testimony (N.T.) 6/24/13 at 30-31.  Pursuant to those negotiations, [Appellant] was sentenced to a cumulative term of not less than 25 years nor more than 50 years in prison.[3]  Id. at 37.  [Appellant] did not file post-sentence motions or a notice of appeal.

[1] [Appellant] was represented at trial by Tariq Karim El Shabazz, Esquire.

[2] 18 Pa.C.S. §§ 2502(c) and 6105(a)(1), respectively.

[3] As to the charge of murder of the third degree, [Appellant] was sentenced to a term of not less than 20 nor more than 40 years in prison.  As to the charge of persons not to possess firearms, [Appellant] was sentenced to a consecutive term of not less than five nor more than ten years in prison.  N.T. 6/24/13 at 37.

On February 7, 2014, [Appellant] filed a timely *pro se* Post Conviction Relief Act (PCRA)[4] petition.[5]  Counsel was appointed[6] and, on March 31, 2016, filed an amended petition, alleging that [Appellant's] plea was not a knowing, intelligent, or voluntary plea, and that trial counsel was ineffective for inducing [Appellant] to plead guilty.  The Commonwealth filed a motion to dismiss on May 12, 2016.  On June 15, 2016, having reviewed the pleadings and the Notes of Testimony from the entry of the plea, and having concluded [Appellant's] claim was meritless, this [c]ourt sent [Appellant] notice of its intent to deny and dismiss his claim without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice).

[4] 42 Pa.C.S. 55 9541-9546.

[5] [Appellant] also filed a petition for transcripts and discovery on October 30, 2015, which was forwarded to his attorney, Lee Mandell, Esquire.

[6] Lee Mandell, Esquire, was appointed to represent [Appellant] on collateral attack, and entered his appearance on July 2, 2014.

[Appellant] thereafter sent three *pro se* correspondences to the [c]ourt, which were received on June 27, 2016, August 1, 2016, and September 26, 2016. These explained his motivations for pleading guilty, asked to be updated on the status of his petition, and discussed his mental health issues and mental state during the crime, specifically alleging diminished capacity.[7] This [c]ourt considered [Appellant's] submissions as his response to the 907 Notice. After giving them full consideration, on November 29, 2016, this [c]ourt sent [Appellant] a supplemental 907 Notice (Supplemental 907 Notice). On December 5, 2016, [Appellant] requested an extension to reply to the supplemental 907 Notice in order to access his mental health records. On December 12, 2016, this [c]ourt ordered that any response would be due no later than February 10, 2017.[8] [Appellant] filed a *pro se* response to the Supplemental 907 Notice on December 15, 2016, and several *pro se* addenda on December 15, 2016, December 19, 2016,[9] and January 4, 2017.[10]

> [7] All *pro se* filings were docketed, and notice of their receipt and contents was sent to [Appellant] and counsel.
>
> [8] The December 12, 2016 order lists the date as February 10, 2016. This was clearly in error.
>
> [9] Based upon the dates [Appellant] gave these documents, the *pro se* response and first two addenda may have been drafted before he received notice of the extension.
>
> [10] These were similar in content to his previous *pro se* correspondence, focusing on his mental health issues and that he no longer had access to his mental health evaluations.

- 3 -

On February, 17, 2017, after having reviewed the petition and copious record, this [c]ourt dismissed the petition. On March 15, 2017, [Appellant] filed: a notice of appeal, a 1925(b) statement (1925(b) Statement),[11] and an application to appeal *in forma pauperis*, all *pro se*. These were received in chambers on March 24, 2017. However, because [Appellant] continued to be represented by PCRA counsel, who also filed a notice of appeal on March 20, 2017, on April 13, 2017, this [c]ourt ordered that counsel to [sic] file a 1925(b) Statement.[12] Counsel's 1925(b) Statement was filed on May 4, 2017.[13]

[11] Pa.R.A.P. 1925(b).

[12] The April 13, 2017, order had originally been filed on March 22, 2017, but was returned to chambers as the address counsel provided on the notice of appeal was inaccurate.

[13] [Appellant's] *pro se* 1925(b) Statement alleged ineffective assistance of counsel for: "excluding mental health evaluation" and "failing to get a diagnosis of mental health." Additionally, he claimed he was "never afforded the ability to present any psychiatric opinion..." Statement of Matter Complained of Appeal 1925(b) (*pro se*) 3/15/17 (emphasis in original). However, the May 4, 2017, Statement from counsel serves as the basis of this opinion, as this [c]ourt is under no obligation to entertain hybrid representation. "There is no statutory or constitutional requirement that a court must review a *pro se* appellate brief which is submitted by a counseled appellant." Commonwealth v. Ellis, 626 A.2d 1137, 1138 (Pa. 1993). Under Pa.R.A.P. 3304 the *pro se* filing will be forwarded to the counsel of record, while the counsel's filing will be reviewed. Id. at 1139; Pa.R.A.P. 3304.

PCRA Court Opinion, 7/7/17, at 1-3.

Appellant presents the following issue for our review:

I. Did the PCRA Court err when it dismissed the Amended Petition without a Hearing but where [Appellant] pled and would have

- 4 -

been able to prove that he should have been permitted to withdraw his Guilty Plea where [Appellant] claims that his Plea was not entered in a knowing, intelligent and voluntary fashion?

Appellant's Brief at 3.

Appellant argues that the PCRA court erred in dismissing his PCRA petition without first holding an evidentiary hearing. Appellant's Brief at 7-11. Appellant asserts that his trial counsel was ineffective for forcing Appellant to enter a guilty plea and that a PCRA hearing was necessary in order for the PCRA court to resolve the question of whether Appellant's plea was knowing, intelligent and voluntary.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and

is without a trace of support in either the record or from other evidence. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001). A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing. ***Id.***

In addition, Appellant challenges the effective assistance of his trial counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the

particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record.

- 7 -

*Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

The PCRA will provide relief to an appellant if ineffective assistance of counsel caused him or her to enter an involuntary plea of guilt. *Commonwealth v. Lynch*, 820 A.2d 728 (Pa. Super. 2003). We conduct our review of such a claim in accordance with 42 Pa.C.S. § 9543(a)(2)(ii). *Lynch*, 820 A.2d at 732. "The voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id*. at 733 (quoting *Commonwealth v. Hickman*, 799 A.2d 136 (Pa. Super. 2002)).

Further, we are mindful of the following:

Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise.

\* \* \*

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

\* \* \*

A defendant who elects to plead guilty has a duty to answer questions truthfully. We cannot permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

***Commonwealth v. Yeomans***, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citing

***Commonwealth v. Pollard***, 832 A.2d 517 (Pa. Super. 2003)).

We have reviewed the briefs of the parties, the relevant law, the thorough opinion of the PCRA court, and the complete certified record before us on appeal. We conclude that the PCRA court's opinion adequately and accurately addresses Appellant's allegation that the PCRA court erred in failing to hold an evidentiary hearing to determine whether trial counsel was ineffective in handling Appellant's guilty plea. PCRA Court Opinion, 7/7/17, at 4-9. Indeed, upon consideration of the facts surrounding the guilty plea, the transcript of the guilty plea hearing, and the relevant law, we fail to see how trial counsel could have induced Appellant to enter an involuntary guilty plea in this matter. Accordingly, because the record supports the PCRA court's analysis, we adopt its opinion as our own, and conclude that Appellant's claim lacks merit.[1]

Order affirmed.

_____

[1] The parties are directed to attach a copy of the July 7, 2017 opinion in the event of further proceedings in this matter.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/16/2018*

PHILADELPHIA COURT OF COMMON PLEAS
CRIMINAL TRIAL DIVISION

COMMONWEALTH                                :

                                            :           CP-51-CR-0001720-2012

         v.                                 :

                                            :           Superior Court Docket
                                                        No.: 943 EDA 2017
SIDIQUE MANSARAY                      **FILED**

                                      **JUL 0 7 2017**

                                      **Office of Judicial Records**
Sarmina, J.                           **Appeals/Post Trial**
July 7, 2017

OPINION

**PROCEDURAL HISTORY:**

On June 24, 2013, Sidique Mansaray (hereafter, petitioner) entered into a negotiated guilty

plea[1] to murder of the third degree (H-3) and persons not to possess firearms (F-2).[2] Notes of

Testimony (N.T.) 6/24/13 at 30-31. Pursuant to those negotiations, petitioner was sentenced to a

cumulative term of not less than 25 years nor more than 50 years in prison.[3] Id. at 37. Petitioner did

not file post-sentence motions or a notice of appeal.

On February 7, 2014, petitioner filed a timely *pro se* Post Conviction Relief Act (PCRA)[4]

petition.[5] Counsel was appointed[6] and, on March 31, 2016, filed an amended petition, alleging that

---

[1] Petitioner was represented at trial by Tariq Karim El Shabazz, Esquire.

[2] 18 Pa.C.S. §§ 2502(c) and 6105(a)(1), respectively.

[3] As to the charge of murder of the third degree, petitioner was sentenced to a term of not less than 20 nor more than 40 years in prison. As to the charge of persons not to possess firearms, petitioner was sentenced to a consecutive term of not less than five nor more than ten years in prison. N.T. 6/24/13 at 37.

[4] 42 Pa.C.S. §§ 9541-9546

[5] Petitioner also filed a petition for transcripts and discovery on October 30, 2015, which was forwarded to his attorney, Lee Mandell, Esquire.

[6] Lee Mandell, Esquire, was appointed to represent petitioner on collateral attack, and entered his appearance on July 2, 2014.

petitioner's plea was not a knowing, intelligent, or voluntary plea, and that trial counsel was ineffective for inducing petitioner to plead guilty. The Commonwealth filed a motion to dismiss on May 12, 2016. On June 15, 2016, having reviewed the pleadings and the Notes of Testimony from the entry of the plea, and having concluded petitioner's claim was meritless, this Court sent petitioner notice of its intent to deny and dismiss his claim without a hearing pursuant to Pa.R.Crim.P. 907 (907 Notice).

Petitioner thereafter sent three *pro se* correspondences to the Court, which were received on June 27, 2016, August 1, 2016, and September 26, 2016. These explained his motivations for pleading guilty, asked to be updated on the status of his petition, and discussed his mental health issues and mental state during the crime, specifically alleging diminished capacity.[7] This Court considered petitioner's submissions as his response to the 907 Notice. After giving them full consideration, on November 29, 2016, this Court sent petitioner a supplemental 907 Notice (Supplemental 907 Notice). On December 5, 2016, petitioner requested an extension to reply to the supplemental 907 Notice in order to access his mental health records. On December 12, 2016, this Court ordered that any response would be due no later than February 10, 2017.[8] Petitioner filed a *pro se* response to the Supplemental 907 Notice on December 15, 2016, and several *pro se* addenda on December 15, 2016, December 19, 2016,[9] and January 4, 2017.[10]

On February, 17, 2017, after having reviewed the petition and copious record, this Court dismissed the petition. On March 15, 2017, petitioner filed: a notice of appeal, a 1925(b) statement

---

[7] All *pro se* filings were docketed, and notice of their receipt and contents was sent to petitioner and counsel.

[8] The December 12, 2016 order lists the date as February 10, 2016. This was clearly in error.

[9] Based upon the dates petitioner gave these documents, the *pro se* response and first two addenda may have been drafted before he received notice of the extension.

[10] These were similar in content to his previous *pro* se correspondence, focusing on his mental health issues and that he no longer had access to his mental health evaluations.

2

(1925(b) Statement),[11] and an application to appeal *in forma pauperis*, all *pro se*. These were received in chambers on March 24, 2017. However, because petitioner continued to be represented by PCRA counsel, who also filed a notice of appeal on March 20, 2017, on April 13, 2017, this Court ordered that counsel to file a 1925(b) Statement.[12] Counsel's 1925(b) Statement was filed on May 4, 2017.[13]

## FACTS

On November 11, 2011, shortly before 11 p.m. while inside of a residence at 912 North 43rd Street in Philadelphia, petitioner was sitting in a room behind the victim, Titus Lowery. N.T. 6/24/13 at 20. There had been previous disagreements between the two. Id. Petitioner had in his possession at the time a "sawed off" shotgun, which he shot one time, hitting the victim in the back. Id. The shotgun cup was recovered from the victim's body. Id. at 21. The victim was pronounced dead at the Hospital of the University of Pennsylvania. Id. The next day, petitioner was apprehended at 30th Street Station trying to board an Amtrak train to New Jersey. Id. at 21. After being taken down to the Homicide Unit of the Philadelphia Police Department, petitioner gave a statement, "almost completely taking responsibility for the crime." N.T. 6/24/13 at 21. A DNA analysis found petitioner's DNA on the shotgun. Id. Witnesses reported seeing petitioner run out of the house after the gun was fired.[14] Id.

---

[11] Pa.R.A.P. 1925(b).

[12] The April 13, 2017, order had originally been filed on March 22, 2017, but was returned to chambers as the address counsel provided on the notice of appeal was inaccurate.

[13] Petitioner's *pro se* 1925(b) Statement alleged ineffective assistance of counsel for: "excluding mental health evaluation" and "failing to get a diagnosis of mental health." Additionally, he claimed he was "never afforded the ability to present any psychiatric opinion…" Statement of Matter Complained of Appeal 1925(b) (*pro se*) 3/15/17 (emphasis in original). However, the May 4, 2017, Statement from counsel serves as the basis of this opinion, as this Court is under no obligation to entertain hybrid representation. "[T]here is no statutory or constitutional requirement that a court must review a *pro se* appellate brief which is submitted by a counseled appellant." Commonwealth v. Ellis, 626 A.2d 1137, 1138 (Pa. 1993). Under Pa.R.A.P. 3304 the *pro se* filing will be forwarded to the counsel of record, while the counsel's filing will be reviewed. Id. at 1139; Pa.R.A.P. 3304.

[14] As this was a guilty plea, the Commonwealth merely recited the facts into the record. These witnesses were not named.

3

## LEGAL ANALYSIS:

A single claim is raised in this appeal: "[t]hat the Trial/PCRA Court erred when it denied the Defendant's Amended PCRA Petition without a hearing, as the Defendant pled, and would have been able to prove at such a hearing, that his guilty plea was not entered in a knowing, intelligent and voluntary fashion and where trial counsel rendered ineffective assistance of counsel in permitting the plea to be entered where counsel knew, or should have known, that defendant was not entering the plea in a voluntary manner."[15] 1925(b) Statement 5/4/17.

This was the same claim counsel had raised in petitioner's amended PCRA petition. Amended PCRA Petition, 5/31/16. Specifically, in his objection to the 907 Notice, petitioner asserted that his claim was unknowing and involuntary because trial counsel failed to acquire a psychiatrist to evaluate his mental condition or explore diminished capacity as a viable defense at the time. Petitioner's *pro se* Objection to the Court's Intention to Dismiss, 6/22/16 at 2-3. However, because a successful diminished capacity defense would have resulted in being convicted of the same charge to which petitioner pled guilty, and because petitioner asserted no facts and presented no other evidence which would have supported an insanity defense, petitioner's claim failed.

According to the Pennsylvania Supreme Court in Commonwealth v. Balodis, 747 A.2d 34, 343 (Pa. 2000), counsel is presumed effective, and under 42 Pa.C.S. § 9543(a), petitioner has the burden of proving ineffective assistance of counsel. In order to be eligible for PCRA relief due to ineffective assistance, petitioner is required to prove that such assistance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Petitioner "must prove (1) that the underlying claim has arguable merit, (2) that counsel's conduct was without a reasonable basis designed to effectuate his or her client's

---

[15] The 1925(b) Statement also reiterates the request for an evidentiary hearing or a withdrawal of the guilty plea. However, an appeal is not the correct stage of proceedings for this Court to grant that relief.

4

interest, and (3) that counsel's ineffectiveness prejudiced [petitioner]." Commonwealth v. Allen, 833 A.2d 800, 802 (Pa.Super. 2003) (citations omitted). "All three prongs of this test must be satisfied. If [petitioner] fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel." Commonwealth v. O'Bidos, 849 A.2d 243, 249 (Pa.Super. 2004).

Where a petitioner has entered a guilty plea, the petitioner is eligible for relief under the PCRA if the conviction or sentence resulted from "[a] plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S. § 9543(a)(2)(iii). The voluntariness of a guilty plea depends on "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Commonwealth v. Lynch, 820 A.2d 728, 733 (Pa.Super. 2003).

On June 24, 2013, this Court was advised that petitioner wished to enter a guilty plea, and after petitioner had completed a Written Guilty Plea Colloquy form, this Court then conducted an extensive oral colloquy with petitioner, wherein this Court delved into petitioner's understanding of his decision to plead guilty, the terms of the plea (i.e., the sentences that would be imposed and that by pleading guilty to third degree murder he avoided going to trial for first degree murder), and the rights he was relinquishing. N.T. 6/24/13 at 3-31. This Court informed petitioner that, by pleading guilty, he was giving up the important right to a trial, where the Commonwealth would have the burden to prove petitioner's guilt beyond a reasonable doubt. Id. at 10-12. At all times during the colloquy, petitioner indicated that he understood. Id. at 3-31. When the Court asked petitioner whether it was his decision to plead guilty, the following exchange occurred:

> The Court: And whose decision was it for you to plead guilty, Mr. Mansaray?
> Petitioner: My lawyer's, right?
> The Court: Really?
> Petitioner: No, mine.

5

The Court: Well, which answer is it? Let me just tell you, Mr. Mansaray, there are three and sometimes four decisions that are for you alone to make. The first is whether you wish to plead guilty or go to trial. Do you understand that?

Petitioner: Yes.

[ . . . ]

The Court: So what made you say that it was your attorney's decision for you to plead guilty?

Petitioner: I mean, he's the one that gave me the information that the deal was on the table.

The Court: Yes. It is his requirement under the Rules of Professional Conduct and under the law. He is required to communicate to you any offer that is made by the Commonwealth.

Petitioner: Right. But it is my choice.

The Court: You sure?

Petitioner: Yes.

The Court: You can't come back later and say, oh, my attorney told me whatever.

Petitioner: No.

[ . . . ]

The Court: All right. So it is your decision to enter this plea?

Petitioner: Yes.

The Court: Because if you want the trial, like I said, today is the day to start it and we can go to trial. What is it that you wish to do?

Petitioner: I wish to plead guilty.

Id. at 17-20.

The Commonwealth then summarized the facts of the case, and a discussion took place regarding petitioner's mental capacity. Id. at 20-22, 24-26. Petitioner explained that he was hearing voices at the time he committed this crime, but he was now being treated with the drug Risperdal. Id. at 25-26. Thereafter, trial counsel explained for the record that he had discussed the defense of diminished capacity with petitioner and his family, which, if successful, would have resulted in a conviction of third degree murder, and they mutually determined that the plea agreement was petitioner's best option. N.T. 6/24/13 at 28-30. Thereafter, petitioner entered his guilty plea to murder of the third degree and persons not to possess firearms. Id. at 30-31. This Court then made a formal determination that the entry of petitioner's guilty plea was made knowingly, intelligently, and voluntarily. Id. at 31.

To withdraw his guilty plea, petitioner could not simply contradict the statements he made in the colloquy with the Court: he needed to have raised specific grounds stating how the plea was

6

defective. Commonwealth v Gonzales, 840 A.2d 326, 330 (Pa.Super. 2003). The defendant in Gonzales pled guilty, but later filed a motion to withdraw his plea, alleging coercion. Gonzales, 840 A.2d at 330. However, he provided no evidence of this coercion, only alleging he was innocent and forced to plead. Id. As there was no evidence to support a withdrawal of his plea, the appeal was denied. Id. at 331.

Petitioner did not allege that this Court's colloquy was defective, and admitted that "[t]he Court seems to have substantially complied with the requirements[.]" Amended PCRA Petition, 5/31/16. Petitioner provided no specific improper advice from his attorney which led him to enter his plea rather than go to trial. This Court informed petitioner of the important rights he was giving up by choosing to forego a trial, where he could have been convicted of first degree murder and sentenced to life in prison. Just as in Gonzales, petitioner had only allegations, not evidence.

In his objections to this Court's 907 Notice, petitioner disputed trial counsel's representations to the Court at the guilty plea hearing, and asserted that counsel did not seek a psychiatric evaluation of petitioner or speak to him or his family with respect to a diminished capacity defense. Petitioner's *pro se* Objection to the Court's Intention to Dismiss, 6/22/16 at 2-3. Petitioner maintained that the "[first] time I heard the words diminished capacity was at my sentencing." Id. Even assuming petitioner is correct, counsel would not have been ineffective for failure to investigate or proceed to trial with a defense of diminished capacity under the circumstances of this case. A successful diminished capacity defense to a charge of first-degree murder negates the element of specific intent to kill, and only reduces the charge of first-degree murder to third-degree murder. Commonwealth v. Bracey, 795 A.2d 935, 946 n. 10 (Pa. 2001), *citing* Commonwealth v. McCollum, 738 A.2d 1007, 1009 (Pa. 1999). Therefore, even if counsel did fail to investigate, discuss, or proceed to trial with a diminished capacity defense, a successful diminished capacity defense would have resulted in petitioner being found guilty of third-degree murder, which

7

is the same charge to which petitioner pled guilty. This Court explained this to petitioner during the colloquy, and petitioner replied that he understood. N.T. 6/24/13 at 24. Because petitioner could not demonstrate that this claim had arguable merit or that counsel's decision caused him prejudice, the claim for ineffective assistance of counsel failed.

With respect to evidence of petitioner's mental state, this Court notes that petitioner had presented no facts which indicated that petitioner could have presented a viable insanity defense. The mental state of a defendant can serve as a complete defense to criminal charges where the defendant demonstrates that they meet the definition of "legally insane." 18 Pa.C.S. § 315(a). Despite petitioner's assertions to the contrary, insanity is a legal conclusion, not a medical one. The term "legally insane" is defined as a state of mind where:

> [A]t the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. § 315(b).

Commonwealth v. Frey similarly dealt with a defendant who pled guilty to murder, then later attempted to raise a defense of insanity to both negate the plea and try for a lower sentence. 904 A.2d 866, 869 (Pa. 2006). However, the Court there found there was sufficient evidence for his conviction, and that even after being examined by mental health experts, there was no evidence defendant was so deficient of reason that defendant was "unaware of [the] nature and quality of the act; or that the act was wrong." Id. at 871. It is the defendant's burden to provide the evidence of insanity. Id.

Petitioner's assertions during the guilty plea colloquy that he was hearing voices at the time that he committed the crime would similarly not have met this standard. Even if imagined voices were provoking petitioner to violence, petitioner remained aware of what he was doing and that his actions were wrong. At no point in any proceedings before this Court did petitioner ever assert that,

8

due to his mental condition, he was unaware of what he was doing. Despite PCRA counsel's bald assertion as to petitioner's mental state, PCRA counsel did not have a psychiatrist evaluate petitioner to determine if there was any merit to the insanity claim. Just as in Frey, it was petitioner's burden to produce evidence of this, and he failed to do so. There was not enough evidence in the record to prove an insanity defense, and because petitioner has claimed he was aware of the acts when he was committing them, it is unlikely psychiatric evaluations would be enough to change this. As this claim had no arguable merit, counsel could not be found ineffective for failure to order a psychiatric evaluation of petitioner for purposes of presenting an insanity defense.

As petitioner did not present any evidence of insanity, and a successful trial defense of diminished capacity would not have led to a different conviction and sentence, petitioner did not demonstrate ineffective assistance of counsel, or that his plea was entered in an unknowing, unintelligent, or involuntary fashion. Therefore, petitioner's claim failed.

For the foregoing reasons, the dismissal of petitioner's PCRA petition should be affirmed.

BY THE COURT:

M. TERESA SARMINA                J.

9